890 F.2d 396
 Marie HUDGINS, Plaintiff-Appellee,
v.
The CITY OF ASHBURN, GEORGIA, and J.I. Youngblood,
individually and in his official capacity as Mayor of the
City of Ashburn; and Larry Barfield, Shirley Turner,
Freddie Weston, Everett A. Garner and Hollis Hayes,
individually and in their capacities as council members of
the City of Ashburn, and their successors in office,
Defendants-Appellants.
 No. 88-8892.
 United States Court of Appeals, Eleventh Circuit.
 Dec. 13, 1989.
As Amended Jan. 24, 1990.
 
 George M. Peagler, Jr., Americus, Ga., for defendants-appellants.
 Robert C. Wilmot, Reinhardt & Whitley, Tifton, Ga., for plaintiff-appellee.
 Appeal from the United States District Court for the Middle District of Georgia.
 Before FAY and HATCHETT, Circuit Judges, and ALLGOOD*, Senior District Judge.
 FAY, Circuit Judge:
 
 
 1
 This appeal is limited to an examination of the qualified-immunity status of three Ashburn, Georgia, city-council members, who voted not to re-elect plaintiff-appellee Marie Hudgins as the city clerk for the year 1986. Finding that factual questions prevented determination of this issue, the district court denied summary judgment to defendants-appellants Larry Barfield, Shirley Turner and Everett A. Garner. After reviewing the record, we conclude that summary judgment is appropriate as a matter of law. Therefore, we reverse.
 
 I. BACKGROUND
 A. Statement of Facts
 
 2
 Plaintiff-appellee Hudgins has held Ashburn city-clerk positions in two capacities. She was assistant city clerk from February, 1963 until July, 1966, and from July, 1967 until January, 1976, when she was appointed city clerk by the Ashburn city council upon the retirement of the prior city clerk.[1] Thereafter, she was elected city clerk annually by the city council until January, 1986.
 
 
 3
 At the regular council meeting on January 2, 1986, Hudgins, as city clerk, recorded the minutes. The council members present at this meeting were Mayor J.I. Youngblood, Hollis Hayes, Freddie J. Weston, Larry Barfield, Shirley Turner and Everett A. Garner. Council members Barfield and Turner were newly elected to the city council in 1985, as was council member Garner in 1986.
 
 
 4
 Council member Barfield moved to nominate Buddy McLeod as city clerk for 1986. This motion was seconded by council member Garner. No other nominations were made. McLeod was elected city clerk with Barfield, Turner and Garner voting for him, and Hayes and Weston abstaining. Hudgins has admitted that she specifically asked Mayor Youngblood not to veto a three-to-two vote not to rehire her, although his overriding the election might have allowed her to continue as city clerk until another election.[2]
 
 
 5
 The position of city clerk is provided and described in the relevant 1983 Ashburn, Georgia, Code of Ordinances (Ashburn Code), which recodified Ashburn ordinances and superseded former ordinances.[3] The Ashburn Code designates the election and term of office of specific officers, including the city clerk, as follows:
 
 
 6
 At the first regular meeting of the city council after qualification, or as soon thereafter as practicable, the following municipal officers of the city shall be elected by the city council and shall hold their office for a term of one (1) year and until their successors are elected and qualified: City attorney, city clerk, city treasurer, police chief, and such other officers and heads of departments as are deemed necessary and appropriate; provided however, that any two (2) or more offices may be combined and filled by one person.
 
 
 7
 Ashburn, Ga., Code art. IV, Sec. 4.1 (1983) (emphasis added). By individual affidavits, the council members have averred that they voted or abstained from voting in the 1986 election for city clerk pursuant to the Ashburn Code Sec. 4.1, providing that the city clerk be elected each year by the city council.[4] Hudgins has admitted that the Ashburn Code provides that the city clerk is elected for a twelve-month term, subject to re-election for the following year.[5]
 
 
 8
 Furthermore, the Ashburn Code establishes a Personnel Management System concerning employment conditions, including disciplinary procedures. Thereunder, the city clerk specifically is excluded from coverage as stated in pertinent part:
 
 
 9
 The regular service shall be a permanent service to which this section shall apply. It shall comprise all employees serving in continuing positions with the exception of the following:
 
 
 10
 ....
 
 
 11
 (4) Any person appointed to a position designated by the city council as excepted, which because of its nature cannot or should not be appropriately included in the regular service. Included in this category are confidential, policy determining, or key management positions. The city council may, by individual action, give an excepted, temporary or irregular employee coverage under any part, parts or all of the provisions of this section and its supporting policies. These positions include the following: city administrator, city clerk, chief of police, city attorney, water and sewage superintendent, streets and sanitation superintendent, and gas superintendent.
 
 
 12
 (5) Excepted employees shall have their pay and other conditions of employment established individually by the city council.
 
 
 13
 Ashburn, Ga., Code Sec. 2-39(b)(4) & (5) (emphasis added).
 
 
 14
 In this action, Hudgins has maintained that the 1982 City of Ashburn Personnel Management Plan (1982 Plan) was operative in January, 1986, when she was not re-elected as city clerk. From this source, she claims a property interest in her continued employment as city clerk. Hudgins concedes that the 1982 Plan was not included in the 1983 Ashburn Code. Nevertheless, she explains its omission as being her failure, as city clerk, to send that plan with other revisions to the company printing the 1983 Ashburn Code.[6] The 1983 Ashburn Code has not been amended subsequently to include the 1982 Plan.[7]
 
 B. Preceding Procedure
 
 15
 Hudgins' complaint alleges that she had a legitimate expectation of continued employment as Ashburn city clerk and that she was deprived of this property interest without due process of law in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. Sec. 1983.[8] The individual defendants raised the immunity defense in their respective answers. Each council member-defendant states that he or she acted in good faith individually and as an elected official.
 
 
 16
 Following extensive discovery, including numerous depositions, defendants moved for summary judgment on two grounds. First, Hudgins had no property interest in her continued employment as city clerk under Georgia law and, consequently, she was not entitled to procedural due process when she was not re-elected. Second, the individual defendants warranted qualified immunity because they voted for the city clerk on January 2, 1986, pursuant to the Ashburn Code Sec. 4.1, which provides for the annual election of the city clerk. Plaintiff filed a cross motion for summary judgment and argued that defendants were precluded from qualified-immunity protection because they had acted in bad faith by terminating Hudgins' employment as city clerk without prior notice and a hearing in violation of her fundamental due-process rights under the 1982 Plan.[9] Defendants countered with a reply brief supporting their summary-judgment motion and opposing plaintiff's summary-judgment motion. They distilled the issue in this case to be whether or not Hudgins was covered by any laws or regulations that would create a property interest in her continued employment as city clerk. Defendants also reiterated their contention that they were entitled to qualified immunity in their individual capacity because their not re-electing Hudgins as city clerk was in accordance with the Ashburn Code.
 
 
 17
 After considering the parties' cross motions for summary judgment, the district court found that summary judgment as to all issues was inappropriate because material, factual questions remained to be decided.[10] With respect to Hudgins' property interest in her continued employment as Ashburn city clerk, the district court enumerated two factual questions which required resolution: "(1) whether the 1982 Personnel Management Plan or the Personnel Management System contained in the 1983 City Code is applicable to Plaintiff Hudgins' case; and, (2) if the 1982 Plan is applicable, then whether the office of city clerk should be categorized as a temporary or permanent position."[11] The district court concluded that "[t]hese issues are factual and not legal in nature, and can only be determined after an evidentiary hearing or trial."[12] Accordingly, the district court denied plaintiff's summary-judgment motion, in which she contended that she had a property interest in her continued employment as Ashburn city clerk. While not specifically addressed, the district court apparently also denied defendants' summary-judgment motion as to its basis on the lack of plaintiff's property interest in her continued employment. This issue evidently remains for trial on the merits.
 
 
 18
 The district court, however, granted partial summary judgment on the qualified-immunity defense raised by defendants. Finding that council members-defendants Youngblood, Weston and Hayes did not participate personally in Hudgins' alleged constitutional deprivation, the district court granted summary judgment to these defendants in their individual and official capacities. Concluding that plaintiff Hudgins' complaints primarily were lodged against council members-defendants Barfield, Turner and Garner for their roles in not re-electing her as city clerk and that her allegations implicated these defendants in their individual and official roles, the district court denied summary judgment to them on the basis of qualified immunity. The district court found that the two unresolved and above-stated factual issues, which prevented adjudication of plaintiff Hudgins' property interest in her continued employment as Ashburn city clerk, would be relevant to determining whether or not the three remaining council members-defendants could be held liable in their individual and/or official capacities. Defendants-appellants Barfield, Turner and Garner have appealed to this court the district court's denial of summary judgment to them on their alternative ground of qualified immunity.
 
 II. EXPLICATION
 A. Jurisdiction
 
 19
 Generally, a federal appellate court has jurisdiction to review only final decisions of district courts under 28 U.S.C. Sec. 1291, unless an issue is certified for interlocutory appeal pursuant to 28 U.S.C. Sec. 1292.[13] 28 U.S.C. Secs. 1291 & 1292 (1982); Flinn v. Gordon, 775 F.2d 1551, 1552 (11th Cir.1985), cert. denied, 476 U.S. 1116, 106 S.Ct. 1972, 90 L.Ed.2d 656 (1986). The Supreme Court, however, has held "that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. Sec. 1291 notwithstanding the absence of a final judgment." Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). Additionally, the Court determined that a district court's denial of a claim of qualified immunity is an appealable interlocutory decision within the meaning of the collateral order doctrine, since it is separable from the merits of the action and capable of conclusive determination. Mitchell, 472 U.S. at 524-30, 105 S.Ct. at 2814-17; see Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Coopers & Lybrand v. Livesay, 437 U.S. 463, 467-68, 98 S.Ct. 2454, 2457-58, 57 L.Ed.2d 351 (1978); Rich v. Dollar, 841 F.2d 1558, 1560 (11th Cir.1988). Procedurally, "[q]ualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official." Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982); Rich, 841 F.2d at 1563; Wilson v. Attaway, 757 F.2d 1227, 1246 (11th Cir.1985). A review and understanding of the Court's reasoning in creating this qualified-immunity exception is instructive in its application.
 
 
 20
 The Supreme Court has recognized that public officials require the protection of qualified immunity from damage suits in order to execute their duties without interference and free from threats of liability, provided that their conduct is not unlawful.[14] Harlow, 457 U.S. at 806, 102 S.Ct. at 2732. "The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815 (emphasis in original); Rich, 841 F.2d at 1560; Childress v. Small Business Admin., 825 F.2d 1550, 1552 (11th Cir.1987) (per curiam). Therefore, a district court's denial of qualified immunity is immediately appealable. Clark v. Evans, 840 F.2d 876, 879 (11th Cir.1988). The Court has clarified qualified immunity by holding "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818, 102 S.Ct. at 2738 (emphasis added). The effect of this objective test is broad; qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).
 
 
 21
 In this action, extensive discovery has been conducted and the case is ready for trial. Upon defendants' filing their summary-judgment motion, in part based upon qualified immunity, the district court had to decide if that defense was applicable to the individual defendants or the purpose of the defense would be defeated. The district court's determination of this issue should have turned on whether or not council members-defendants' decision not to re-elect Hudgins as Ashburn city clerk for 1986 violated clearly established applicable law or any constitutional right, which a reasonable council member would have known. In this case, determining if the Ashburn Code was clearly established on January 2, 1986, when the vote for the 1986 city clerk was taken, is purely a legal question for the court to decide. See Rich, 841 F.2d at 1563; Meade v. Grubbs, 841 F.2d 1512, 1533 (10th Cir.1988). Since determination of the council members' qualified-immunity status turns on a question of law, not fact, and defendants-appellants pleaded immunity as an affirmative defense, this court has jurisdiction under 28 U.S.C. Sec. 1291 to review the district court's denial of summary judgment based on qualified immunity applicable to defendants-appellants Barfield, Turner and Garner. Mitchell, 472 U.S. at 530, 105 S.Ct. at 2817; Rich, 841 F.2d at 1560.
 
 
 22
 B. Summary-Judgment Review of the Denial of Qualified Immunity
 
 1. Review Standards
 
 23
 Pursuant to 28 U.S.C. Sec. 1291, we review a district court's denial of summary judgment based on qualified immunity de novo because the availability of qualified immunity necessarily is a question of law. Waldrop, 871 F.2d at 1032 n. 1; Rich, 841 F.2d at 1561; see Mitchell, 472 U.S. at 530, 105 S.Ct. at 2817; Jasinski v. Adams, 781 F.2d 843, 846 (11th Cir.1986) (per curiam). Determination of jurisdiction actually must be preceded by review of the qualified-immunity, summary-judgment motion denied by the district court in order to determine that material factual questions do not exist as to the identified legal issue. If questions of material fact are present, then the district court properly denied summary judgment, and we are without jurisdiction under 28 U.S.C. Sec. 1291 to review that decision since the case will proceed to trial for resolution of those factual questions. See Goddard, 847 F.2d at 769; Riley v. Wainwright, 810 F.2d 1006 (11th Cir.1986) (per curiam), petition for reh'g denied per curiam, 810 F.2d 1007 (11th Cir.1987).[15]
 
 
 24
 The Supreme Court explicitly has guided our review of a district court's denial of summary judgment based on qualified immunity:
 
 
 25
 An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, in cases where the district court has denied summary judgment for the defendant on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established law, whether the law clearly proscribed the actions the defendant claims he took.
 
 
 26
 Mitchell, 472 U.S. at 528, 105 S.Ct. at 2816.
 
 
 27
 In Rich v. Dollar, 841 F.2d 1558 (11th Cir.1988), this court utilized Supreme Court direction and explicated the analysis for summary judgment based upon qualified immunity. Defendants-appellants Barfield, Turner and Garner must establish both that they are entitled to summary judgment as a matter of law through qualified immunity and that no genuine issues of fact relevant to those questions of law exist. Rich, 841 F.2d at 1562; Fed.R.Civ.Pro. 56(c). In order to avoid summary judgment, plaintiff-appellee Hudgins must demonstrate either that defendants-appellants are not entitled to qualified immunity as a matter of law or show a genuine issue of material fact upon which a question of law turns. Rich, 841 F.2d at 1562 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)); Fed.R.Civ.Pro. 56(e). Corresponding to the opposition of any summary-judgment motion, plaintiff-appellee Hudgins, confronted with an appeal from a denial of a motion for summary judgment based on qualified immunity, may not rely on the facts in her complaint, but she must counter the factual showing supporting defendants-appellants' motion for summary judgment so as to raise genuine issues of material fact. Rich, 841 F.2d at 1562 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986)); Fed.R.Civ.P. 56(e).
 
 
 28
 2. The Zeigler/Rich Analysis for Determining Summary Judgment Based on Qualified Immunity
 
 
 29
 Rich recognized that the Supreme Court established its objective-reasonableness test for determining qualified or good-faith immunity in Sec. 1983 actions in order to eliminate difficulties encountered by district courts in determining subjective good faith of defendant government officials. Rich, 841 F.2d at 1563; see Harlow, 457 U.S. at 815-19, 102 S.Ct. at 2736-39; Waldrop, 871 F.2d at 1036. Under this test, set forth in Harlow, the conduct of defendant public officials is measured against " 'clearly established law,' " consisting of statutory or constitutional rights of which a reasonable person should have known. Rich, 841 F.2d at 1563 (quoting Harlow, 457 U.S. at 818, 102 S.Ct. at 2738). Relying upon the proof allocation enunciated in Zeigler v. Jackson, 716 F.2d 847 (11th Cir.1983) (per curiam), Rich delineates the two-part analysis for application of the Harlow/Mitchell objective-reasonableness test for qualified immunity as follows:
 
 
 30
 1. The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."
 
 
 31
 2. Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional law."
 
 
 32
 Rich, 841 F.2d at 1563-64 (citing Zeigler, 716 F.2d at 849).
 
 
 33
 a. Defendants-Appellants' Burden of Proof under Zeigler/Rich
 
 
 34
 We must determine if defendants-appellants were acting within their discretionary authority when they voted not to re-elect Hudgins as Ashburn city clerk for 1986. Former Fifth Circuit cases,[16] hold that a government official proves that he acted within the scope of his discretionary authority by showing " 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.' " Rich, 841 F.2d at 1564 (quoting Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir. Unit A July 1981)); see Douthit v. Jones, 619 F.2d 527, 534 (5th Cir.1980). In this case, the council members-defendants did not re-elect plaintiff Hudgins as Ashburn city clerk at their first regular meeting of 1986, on January 2, 1986. The election of the city clerk as well as other city officials who hold their office for one year is mandated to occur at the first regular city-council meeting by the Ashburn Code Sec. 4.1. All council members have submitted affidavits that they voted or abstained from voting for the city clerk for 1986 pursuant to the Ashburn Code, which provides that the city clerk is to be elected annually. In accordance with the objective dictates of the Ashburn Code, we conclude that defendants-appellants Barfield, Turner and Garner have met their burden of showing that they were acting within the scope of their discretionary authority as Ashburn city-council members when they did not re-elect Hudgins by voting for McLeod as city clerk. See Rich, 841 F.2d at 1564; Zeigler, 716 F.2d at 849.
 
 
 35
 b. Plaintiff-Appellee's Burden of Proof under Zeigler/Rich
 
 
 36
 Once defendants-appellants have shown that their alleged unlawful action was within their discretionary authority, the burden shifts to plaintiff Hudgins to demonstrate lack of good faith or that defendants-appellants' action violated clearly established statutory or constitutional law. Rich, 841 F.2d at 1564; Zeigler, 716 F.2d at 849; see Harlow, 457 U.S. at 818, 202 S.Ct. at 2738. Rich derives from Mitchell two subparts to the second step of the Zeigler/Rich analysis in order to clarify the determination as to whether or not plaintiff has met her burden of showing bad faith by demonstrating that defendant officials violated clearly established law. Rich, 841 F.2d at 1563-64 (citing Mitchell, 472 U.S. at 528, 105 S.Ct. at 2816). First, the court must ascertain whether or not the subject, applicable law was clearly established when defendants' action occurred.[17] Rich, 841 F.2d at 1563-64 (citing Harlow, 457 U.S. at 818, 102 S.Ct. at 2738). Second, the court must determine if a genuine issue of fact exists as to defendants' engaging in conduct violative of that clearly established law. Rich, 841 F.2d at 1563-64 (citing Mitchell, 472 U.S. at 528, 105 S.Ct. at 2816).
 
 
 37
 (1) Determination of Clearly Established Law
 
 
 38
 "[O]ur cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). We must decide if the Ashburn Code was clearly established when defendants-appellants voted not to re-elect Hudgins as city clerk on January 2, 1986. The Ashburn Code provides that the city council at their first regular meeting of the year will elect the city clerk, other city officers and department heads, who shall hold their office for one year until their successors are elected. Ashburn, Ga., Code art. IV, Sec. 4.1. The initial consideration for statutory interpretation is the statutory language, which is conclusive absent a clearly expressed legislative intent to the contrary. Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); United States v. Rawlings, 821 F.2d 1543, 1545 (11th Cir.), cert. denied, 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987). "If the statute is clear on its face, we need not examine additional sources of guidance." Seaboard Sys. R.R. v. I.C.C., 827 F.2d 699, 701 (11th Cir.1987); see United States v. James, 478 U.S. 597, 606, 106 S.Ct. 3116, 3121-22, 92 L.Ed.2d 483 (1986); Board of Governors of the Fed. Reserve Sys. v. Dimension Financial Corp., 474 U.S. 361, 368, 106 S.Ct. 681, 685-86, 88 L.Ed.2d 691 (1986); United States v. Turkette, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); Rawlings, 821 F.2d at 1545; National Wildlife Fed'n v. Marsh, 721 F.2d 767, 773-74 (11th Cir.1983).
 
 
 39
 We conclude that the Ashburn Code Sec. 4.1 is explicit and unambiguous in directing the city council at its first regular meeting of the year to elect the city clerk for a term of one year and that the elected city clerk will hold office until a successor is elected for the following year. As adopted in 1983, the Ashburn Code states that it supersedes all ordinances not included or recognized by reference therein. Hudgins' contention that the 1982 Plan was not included in the Ashburn Code because she failed to send it to the printers with the 1983 Ashburn Code revisions is without merit. The Ashburn Code has not been amended subsequent to its adoption to incorporate the 1982 Plan. This court or the district court would be acting contrary to stated legislative intent, after sufficient time for amendment, to find the 1982 Plan incorporated in the Ashburn Code and, thereby, applicable to Hudgins. We hold that the Ashburn Code art. IV, Sec. 4.1 was clearly established when defendants-appellants voted not to re-elect Hudgins as city clerk for 1986 at the first regular meeting of the city council for that year.[18]
 
 
 40
 (2) Determination of Actions Violative of Clearly Established Law
 
 
 41
 Having concluded that the Ashburn Code was clearly established, we must determine if a genuine issue of material fact exists as to whether or not defendants-appellants' action violated any of Hudgins' statutory or constitutional rights which a reasonable city-council member would have known.[19] See Harlow, 457 U.S. at 818, 102 S.Ct. at 2738; Harrell v. United States, 875 F.2d 828, 830-31 (11th Cir.1989); Rich, 841 F.2d at 1563-64. As defendants-appellants have stated in individual affidavits, their vote on January 2, 1986, for the city clerk was pursuant to the Ashburn Code Sec. 4.1, which directs the city council at their first regular meeting of the year to elect the city clerk as well as other city officers and department heads for a one-year term. We can find no fault or irregularity with the legislative action of voting for city clerk on January 2, 1986, by the Ashburn city council generally or by defendants-appellants specifically.[20] Therefore, we hold that defendants-appellants' electing McLeod as city clerk for 1986 did not violate Hudgins' statutory rights under the Ashburn Code.
 
 
 42
 Having found that defendants-appellants' legislative action of voting not to re-elect plaintiff-appellee as city clerk for 1986 violated no statutory rights of Hudgins under the clearly established Ashburn Code, we also have performed the constitutional analysis. We have determined that the 1983 Ashburn Code affords Hudgins no right to continued employment as Ashburn city clerk.[21] Furthermore, we have concluded that the 1982 Plan, from which she claims a property interest in her continued employment, was not effective on January 2, 1986, and, accordingly, that it is inapplicable to her. Therefore, Hudgins has no ascertainable Fourteenth Amendment property interest in her continued employment as city clerk, and it was neither unconstitutional for defendants-appellants, as city-council members, not to re-elect her as city clerk for 1986, nor for the city council not to give her procedural due process of notice and a hearing.[22]
 
 3. Conclusion
 
 43
 Plaintiff-appellee Hudgins had to show a genuine issue of material fact that defendants-appellants' voting not to re-elect her by electing another as city clerk for 1986, pursuant to the clearly established Ashburn Code, violated some statutory or constitutional right accruing to her in order to prevent summary judgment for defendants-appellants on the basis of qualified immunity. Rich, 841 F.2d at 1562, 1565. Extensive discovery has been completed in this case, and Hudgins has not shown a genuine issue of material fact to avoid summary judgment in favor of defendants-appellants. See Fed.R.Civ.Pro. 56(e); Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815; cf. Jasinski, 781 F.2d at 846, 849-50 (Because issues of material fact became evident during discovery, denial of summary judgment based on qualified immunity was proper.). Accordingly, we hold as a matter of law that plaintiff-appellee has failed to carry her burden of showing that defendants-appellants' voting not to re-elect her as Ashburn city clerk for 1986 violated any statutory or constitutional right to which she was entitled. Rich, 841 F.2d at 1564-66. Summary judgment on the basis of qualified immunity in their individual and official capacities should have been entered for defendants-appellants Barfield, Turner and Garner, who were acting within their scope of discretionary authority. Id. at 1566.
 
 
 44
 Therefore, we REVERSE the district court's denial of summary judgment to defendants-appellants and REMAND with instructions to enter summary judgment in favor of defendants-appellants Barfield, Turner and Garner in their individual and official capacities on the basis of qualified immunity and to conduct further proceedings not inconsistent with this opinion.[23]
 
 
 
 *
 Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 Deposition of Marie Hudgins, Supp. R1-16-17. During the period of July, 1966 until July, 1967, Hudgins left Ashburn to live with her husband, who was stationed in Germany. Id. at 17
 
 
 [2]
 Hudgins Dep., Supp. R1-56-58. Hudgins chose to follow the majority vote of the city council out of concern for adverse action toward her if three council members were against her. Id. at 56, 59
 
 
 [3]
 The preface of the Ashburn Code provides as follows:
 This Code constitutes a complete recodification of the ordinances of the City of Ashburn, Georgia, of a general and permanent nature. As expressed in the Adopting Ordinance, the Code supersedes all such ordinances not included herein or recognized as continuing in force by reference thereto.
 Ashburn, Ga., Code Preface (1983). As delineated in the Ashburn Code, the duties of the city clerk are the following:
 Sec. 2-67. Duties.
 In addition to other duties mentioned in this Code, it shall be the duty of the city clerk to:
 (1) Keep correct and full minutes of the proceedings of the council, together with all ordinances and resolutions, in a book or register kept for that purpose.
 (2) Receive all applications or petitions made to the city, and place them before the mayor, mayor pro tem, or council (as may be necessary or proper from the nature of the petition) at the meeting of council next succeeding the receipt of the same.
 (3) Keep a docket wherein shall be entered the names of all persons tried and fined by the court, the nature of the offense, date of trial, amount of fine, and return of the police officer thereon, the same to be laid before the council at each regular meeting.
 (4) Attend the council at all regular, called or extra meetings.
 (5) Attend upon the mayor or mayor pro tem on each meeting, when held as a police court, or any other business that shall require his presence.
 (6) Receive all applications for licenses and issue the same according to the ordinances.
 (7) Carefully preserve the records of the city and all other valuable documents placed in his hands, as clerk, and while such records and documents are free and open to inspection, he shall not permit them to be removed or taken away except by order of the city council.
 (8) Keep a correct digest of all returns to taxable property in the city.
 (9) Issue all orders, summons, executions, notices and other instruments which may be required of him by the mayor, mayor pro tem or council.
 (10) Keep the following books: A book or rough sheet of minutes; a book of neat and accurate minutes; a book for recording licenses issued; an ordinance book; a book for registration of deeds and documents; a book of minutes of the police court and docket; a book of charges in which all costs must be entered as coming into his hands, from whom, when or what account and the amount; an account of all moneys paid to the city treasurer; a check book which shall contain a margin showing the number, amount, date, for what purpose ordered, and to whom granted in each case; and a book in which he shall register the names and places of business, and date of license of each person, firm, company or corporation doing or carrying on any business calling, trade or profession in the city.
 (Code 1969, Sec. 2-13)
 Sec. 2-68. Service as treasurer.
 The city clerk shall also be city treasurer and perform the duties of that office.
 (Code 1969, Sec. 2-14)
 Ashburn, Ga., Code div. 3, Secs. 2-67 to -68 (1983).
 
 
 [4]
 Affidavits by J.I. Youngblood, Larry Barfield, Shirley Turner, Freddie Weston, Everett A. Garner and Hollis Hayes, R1-28-Attachments E-J. Additionally, the city council elected other city officers and department heads at the January 2, 1986, city-council meeting. Hudgins was not the only city officer, who was not re-elected for 1986. The prior city attorney and police chief also were replaced. Identical to the election procedure for Hudgins, the individuals holding these positions formerly were not nominated, and their elected replacements were the only nominees. Furthermore, with the exception of the city attorney, the same city officers and department heads were re-elected each year from 1977, when Hudgins was elected city clerk, until 1986. Certified Minutes of the Ashburn City Council for the Annual Election of City Officers and Department Heads for the Period Jan. 6, 1977 to Jan. 2, 1986, R1-28-Attachment C
 
 
 [5]
 Hudgins Dep., Supp. R1-36-37, 43-44, 102
 
 
 [6]
 Interestingly, Hudgins has admitted that she erred in failing to send the 1982 Plan to the company printing the 1983 Ashburn Code, and that she brought this oversight to the attention of the mayor. Hudgins Dep., Supp. R1-38, 40, 42. Hudgins claims that the 1982 Plan supersedes the 1983 Ashburn Code because that plan should have been sent to the printer with the ordinance revisions when the 1983 Ashburn Code was printed. Id. at 38
 
 
 [7]
 Not only has Hudgins admitted that the 1983 Ashburn Code has not been amended to include the 1982 Plan, but also she has presented no evidence that the 1982 Plan was intended to be incorporated in the 1983 Ashburn Code. Hudgins Dep., Supp. R1-40. J.I. Youngblood, who was mayor of Ashburn from 1979 until 1986, testified that the city contracted with the Municipal Code Section in Tallahassee, Florida, to revise the Ashburn Code by incorporating ordinances and resolutions adopted since the last recodification and updating the code in compliance with federal and state laws. Deposition of J.I. Youngblood, R1-37-4-5, 35-36. Municipal Code Section attorneys, revising the Ashburn Code, consulted with the Ashburn city attorney in order to draft the recodification accurately. Id. at 36-37. Before adoption, the 1983 Ashburn Code was read to the city council to verify that it included all the specifications that the city council desired. Id. at 37
 Even if the 1982 Plan were applicable, Hudgins apparently would not possess an employment status that would entitle her to a property interest in continuing her job as city clerk. Part I, Sec. 5 of that plan defines temporary employees as "those who are employed in positions not authorized to exceed one year...." City of Ashburn Personnel Management Plan pt. I, Sec. 5 (1982) (prepared by the South Georgia Area Planning and Development Commission). Part III, Sec. 1 of the 1982 Plan precludes temporary employees from coverage with respect to disciplinary and adverse-action procedures and states: "Unless protected by some other policy, regulation, or law, they may be separated at any time without advance notice or appeal." Id. at pt. III, Sec. 1. Part IV, Sec. 1 of the 1982 Plan provides an appeal procedure from adverse action and excepts temporary employees. Id. at pt. IV, Sec. 1. Part V, Sec. 1 of the 1982 Plan provides a grievance procedure and also specifically excludes temporary employees. Id. at pt. V, Sec. 1.
 Council member Weston, who was on the city council when the 1982 Plan was developed and adopted, testified regarding the personnel concerns implemented in the plan: "[A]t that particular time we weren't interested so much in our department heads, but we were interested in making sure that our hired hourly-wage employees would be protected and be given--their rights would be protected against firing once they had been vested as a full-time employee." Deposition of Freddie James Weston, Jr., R1-35-14. Wayne Hobby, who was an Ashburn city-council member from January, 1980 through December, 1985, during the relevant time when the 1982 Plan was adopted and used, verified that any official action by the city council to remove the city clerk from excepted status and to include the city clerk under that plan would be reflected in the city-council minutes. Deposition of Wayne Hobby, R1-41-5, 19-20.
 Furthermore, Julian Martin Lefiles, Jr., who was employed in 1981 by the City of Ashburn, Georgia, to develop a city personnel management plan and who was then the fiscal/personnel specialist for the South Georgia Area Planning and Development Commission, has confirmed that the city clerk was not considered a covered employee under the 1982 Plan, which he drafted. His affidavit opposing plaintiff's cross motion for summary judgment and supporting defendants' summary-judgment motion contradicts his former affidavit, finding Hudgins a covered employee under the 1982 Plan, and states as follows:
 Affiant avers that in light of the provisions of the City Charter of Ashburn, Georgia, specifically Article 4, Section 4.1, and the provisions of the Code of Ordinances of the City of Ashburn, Georgia, specifically Section 2-39, the position of City Clerk of Ashburn, Georgia is a designated excepted position under Section I of the 1982 personnel management plan. Thus, in accordance with paragraph 6 of his July 17, 1987 Affidavit prepared on behalf of Marie Hudgins, former City Clerk of Ashburn, Georgia, the City Clerk of Ashburn, Georgia is excepted from coverage under the 1982 plan prepared by Affiant for the City of Ashburn, Georgia and would not be considered a covered employee under said personnel management plan as prepared by Affiant.
 Affidavit of Julian Martin Lefiles, Jr., R1-44-4 (emphasis added).
 Hudgins has admitted that no other policy, regulation or law is applicable to determine her property interest in her continued employment as city clerk other than the 1982 Plan, the 1983 Ashburn Code Sec. 4.8, and her general anticipation of continued employment as city clerk. Hudgins Dep., Supp. R1-45-46. The 1983 Ashburn Code Sec. 4.8, concerning disciplinary measures including termination, provides that "[a]ll officers elected by the city council shall at all times be subject to the jurisdiction of the council and amenable to its discipline, and the council shall have the power to suspend, fine or remove any of said officers by a majority vote of the whole body, the mayor voting, for any cause that may seem just and proper." Ashburn, Ga., Code art. IV, Sec. 4.8.
 
 
 [8]
 R1-1. Hudgins sought judgment against defendants in their official and individual capacities and reinstatement as Ashburn city clerk; back pay or, alternatively, an award equal to her earnings from the alleged date of termination through the date of trial; general damages of $100,000.00 for emotional distress and mental anguish; punitive damages of $250,000.00; attorneys' fees and costs; and such further relief as the court may deem just and proper. Id. at 6
 
 
 [9]
 Hudgins also has attempted to show bad faith by council members Barfield, Garner and Turner by alleging that they had secret meetings in order to effectuate her removal as city clerk in conscious violation of her statutory or constitutional rights. Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross Motion for Summary Judgment, R1-31-22-23. From our review of the record, we find that the allegation of clandestine meetings held by council members is unsupported, and that any inadvertent discussions, regarding the re-election of Hudgins as city clerk among council members, were for the purpose of expressing opinions rather than a concerted effort to vote against re-electing Hudgins as city clerk. Hudgins Dep., Supp. R1-50, 87; Youngblood Dep., R1-37-9, 34, 40; Weston Dep., R1-35-19-20; Deposition of Hollis Hayes, R1-36-6, 10, 19; Deposition of Shirley Turner, R1-33-10, 18-19, 23, 36; Deposition of Everett A. Garner, R1-34-11-15, 19-20, 30, 44, 46. Furthermore, council member Weston, who testified that he did discuss the re-election of Hudgins as city clerk with council members Barfield, Garner and Turner, also testified as follows regarding this discussion and the reason for not re-electing Hudgins as city clerk:
 Well, the main reason that was given here was that this is an appointed position, we can either appoint or not appoint. And there was no reason other than that given. In other words, there was not a charge of inefficiency or anything like that made. It was on the simple basis that we don't have to appoint.
 Weston Dep., R1-35-11.
 
 
 [10]
 Hudgins v. City of Ashburn, No. 87-4-ALB-AMER (DF) (M.D.Ga. Nov. 8, 1988) (order denying summary judgment to plaintiff and to defendants Barfield, Turner and Garner, and granting summary judgment to defendants Youngblood, Weston and Hayes), R1-45. Pursuant to the district court's order granting summary judgment based on qualified immunity to defendants Youngblood, Weston and Hayes in their individual and official capacities, these defendants do not remain in this case. While we have retained the style of the case as it came to this court from the district court, we note that defendants Youngblood, Weston and Hayes are no longer party defendants and that their names should have been deleted from the case caption
 
 
 [11]
 Id. at 2
 
 
 [12]
 Id
 
 
 [13]
 Federal appellate courts "have jurisdiction of appeals from all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court." 28 U.S.C. Sec. 1291. While 28 U.S.C. Sec. 1292 provides federal appellate jurisdiction for specific interlocutory appeals from district courts, appeals based upon qualified immunity are not included
 
 
 [14]
 The Eleventh Circuit has described the balance that must be achieved between the rights of public officials and individuals with regard to qualified immunity as follows: "The doctrine is intended to balance society's interest in providing a remedy for injured victims and discouraging unlawful conduct against the interest in enabling public officials to act independently and without fear of consequences." Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir.1989); see Goddard v. Urrea, 847 F.2d 765, 768 (11th Cir.1988)
 
 
 [15]
 In Goddard and Riley, cases appealing denials of respective motions for summary judgment based on qualified immunity, the Eleventh Circuit concluded that it did not have jurisdiction because facts material to the determination of this immunity existed
 
 
 [16]
 The Eleventh Circuit has adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc)
 
 
 [17]
 Harlow and Rich instruct that a summary-judgment motion based on qualified immunity also may require determining the applicable law before ascertaining whether or not that law is clearly established. Harlow, 457 U.S. at 818, 102 S.Ct. at 2738; Rich, 841 F.2d at 1563. For the reasons stated herein, it is evident that the applicable law in this case is the 1983 Ashburn Code
 
 
 [18]
 Rich recognizes two instances where qualified immunity is accorded to government officials: 1) when the law that they allegedly violated is not clearly established, see, e.g., Clark, 840 F.2d at 882-84; Muhammad v. Wainwright, 839 F.2d 1422, 1424-25 (11th Cir.1987); Sellers v. United States, 709 F.2d 1469, 1470-71 (11th Cir.1983) (per curiam), and 2) when the law is clearly established and the court determines that defendant's conduct did not violate any right accruing to plaintiff under clearly established law. See Rich, 841 F.2d at 1564-65. We conclude that this case is in the second category, as will be discussed hereinafter
 
 
 [19]
 Council members-appellants Barfield, Turner and Garner were new council members in 1985 and 1986. Consequently, they were not on the city council prior to the effectiveness of the 1983 Ashburn Code and had no reason or responsibility to know about the 1982 Plan or its possible applicability to Hudgins. Furthermore, not only has plaintiff-appellee failed to demonstrate a concerted effort to remove her from her office as city clerk, but also the subjective intent of these defendants-appellants is irrelevant. See Anderson, 483 U.S. at 641, 107 S.Ct. at 3040; Harlow, 457 U.S. at 815-18, 102 S.Ct. at 2736-38; Waldrop, 871 F.2d at 1036; Rich, 841 F.2d at 1563
 
 
 [20]
 While we have analyzed this case under qualified immunity because that was the basis of defendants-appellants' appeal, we note that the council members-defendants more appropriately should have asserted the defense of absolute or legislative immunity since "their challenged conduct furthers legislative duties." Baytree of Inverrary Realty Partners v. City of Lauderhill, 873 F.2d 1407, 1409 (11th Cir.1989). Extrapolating from Supreme Court and former Fifth Circuit precedent, the Eleventh Circuit has concluded that "the vote of a city councilman constitutes an exercise of legislative decision-making," which entitles such city-council member to absolute immunity since voting is a legislative function. Espanola Way Corp. v. Meyerson, 690 F.2d 827, 829 (11th Cir.1982) (citing Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); Hernandez v. City of Lafayette, 643 F.2d 1188, 1193 (5th Cir. Unit A May 1981), cert. denied, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982)), cert. denied, 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983); accord Healy v. Town of Pembroke Park, 831 F.2d 989, 993 (11th Cir.1987)
 
 
 [21]
 Throughout this litigation, Hudgins has mischaracterized defendants-appellants' vote not to re-elect her as city clerk on January 2, 1986, at the first regular meeting of the Ashburn city council for that year as her termination. Plaintiff-appellee was not terminated as city clerk because she served her entire 1985 term for which she was elected in accordance with the Ashburn Code. She simply was not re-elected as city clerk for 1986
 
 
 [22]
 The existence of a legitimate claim of entitlement to a property interest in continued employment, necessarily more than a unilateral expectation, is determined according to state law. Bishop v. Wood, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); Nicholson v. Gant, 816 F.2d 591, 597 (11th Cir.1987) (per curiam). In Georgia, a property interest in public employment attaches whenever a public employee can be terminated only for cause. Crowell v. City of Eastman, 859 F.2d 875, 877 (11th Cir.1988); Barnett v. Housing Auth., 707 F.2d 1571, 1576 (11th Cir.1983); Glenn v. Newman, 614 F.2d 467, 471 (5th Cir.1980); Brownlee v. Williams, 233 Ga. 548, 551-55, 212 S.E.2d 359, 362-64 (1975); see also Ogletree v. Chester, 682 F.2d 1366, 1369-70 (11th Cir.1982) (reviewing the Georgia law of property interest in public employment and delineating when such a property interest accrues, such as in the case of contractual employment or employment permitting termination only for cause). We have concluded herein that plaintiff-appellee Hudgins does not possess for-cause termination status in her continued employment as Ashburn city clerk
 
 
 [23]
 We realize that the district court considered that material factual questions must be resolved before Hudgins' property interest in her continued employment as Ashburn city clerk could be determined. Accordingly, the district court denied plaintiff's motion for summary judgment and did not address specifically defendants' alternative basis for summary judgment, plaintiff's lack of a property interest in her continued employment as city clerk. Apparently, this case will be scheduled for trial upon remand. Since the district court granted qualified immunity to defendants Youngblood, Weston and Hayes in their individual and official capacities, and our decision herein has accorded qualified immunity to defendants-appellants Barfield, Turner and Garner in their individual and official capacities, there are no individual defendants remaining in this case. The only defendant against which plaintiff-appellee can proceed at trial is the City of Ashburn. Because the City of Ashburn acted with respect to Hudgins through its city council, we suggest that the district court revisit defendants' summary-judgment motion as to its alternative basis, the lack of Hudgins' property interest in her continued employment as Ashburn city clerk. Having analyzed the legal questions necessary for this determination herein and having found no genuine issues of material fact as to this issue, we see no triable issues before the district court