UNITED STATES of America ex rel. STINSON, LYONS, GERLIN & BUSTAMANTE, P.A., Plaintiffs,

v.

BLUE CROSS BLUE SHIELD OF GEORGIA, INC., Defendant.

No. CV 489–224.

United States District Court,
S.D. Georgia,
Savannah Division.

Oct. 18, 1990.

Luis C. Bustamante, Tracy E. Tomlin, Miami, Fla., for plaintiffs.

William H. Major, William B. Brown, Atlanta, Ga., Emmett B. Lewis, Washington, D.C., Stuart M. Gerson, Hinton R. Pierce, Lawrence B. Lee, Savannah, Ga., Michael F. Hertz, Steve Altman, Stanley E. Alderson, Attorneys, Civ. Div., Dept. of Justice, Washington, D.C., Sam P. Inglesby, Jr., Savannah, Ga., for defendant.

## ORDER

EDENFIELD, Chief Judge.

The defendant, Blue Cross Blue Shield of Georgia ("BC–GA") has moved to dismiss this action, questioning the Court's subject-matter jurisdiction under the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729–31 (1988) [hereinafter "FCA"], as amended by the False Claims Act Amendments of 1986, Pub.L. No. 99–562, 100 Stat. 3153 (1986) [hereinafter "FCA Amendments"]. In addition, BC–GA moves to dismiss, or, in the alternative, for a more definite statement, on the ground that the *qui tam* plaintiff, Stinson, Lyons, Gerlin, & Bustamante, P.A. ("Stinson Lyons"), has not pleaded its allegations of fraud with the particularity required by Fed.R.Civ.P. 9(b). The jurisdictional issue presents, among other things, a question of statutory construction. The Court does not find BC–GA's jurisdictional arguments persuasive. The Court agrees with BC–GA, however, that Stinson Lyons has not pleaded its complaint with the required particularity. For reasons developed in more detail below, the Court DENIES BC–GA's motion to dismiss, and GRANTS BC–GA's motion for a more definite statement.

## BACKGROUND

### A. Facts and Procedural History

Stinson Lyons has brought this suit against BC–GA, alleging that BC–GA has defrauded the government by shifting responsibility for the payment of insurance claims to Medicare when, under section 116(a) of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), it should not have done so. When workers aged 65–69 ("the working aged") enjoy both Medicare and an employer group health coverage plan, and are still working when they receive benefits, TEFRA requires that Medicare remain the secondary insurer, and that the private insurer pay primary. Stinson Lyons alleges that BC–GA knew of and understood its contractual and legal obligations under TEFRA, but nevertheless tricked Medicare into paying as a primary insurer when BC–GA should have paid primary. The effect of these actions, says Stinson Lyons, was that BC–GA ended up paying out much less than it should have, at the taxpayers' expense, in situations where an insured was covered both by Medicare and private insurance under BC–GA. According to the complaint, BC–GA also concealed and avoided its responsibility to Medicare under TEFRA in certain other situations.

How Stinson Lyons came to learn of this alleged fraud is important to the resolution of whether the Court has subject matter jurisdiction. Several years ago, Stinson Lyons represented a Mr. Leonard in an action brought by Mr. Leonard to redress injuries he sustained in a car crash. *Provident Life & Accident Insurance Co. v. Leonard,* No. 85–10113 CA(15) (Fla. Dade Co. Cir.Ct. March 1985), *rev'd,* 526 So.2d 721 (Fla.Dist.Ct.App.1988) ("the *Leonard* litigation"). During the course of the *Leonard* litigation, Stinson Lyons became aware of what it considered to be illegal claims handling practices of Mr. Leonard's insurer, Provident Life & Accident Insurance Company ("Provident"). Through discovery in the *Leonard* litigation, Stinson Lyons obtained internal corporate memoranda from Provident. One of these memoranda addressed Provident's method of processing claims for the working aged. The memorandum recommended changing the procedure to comply with Medicare regulations promulgated in the wake of TEFRA. Another, entitled "Policy Issue, Medicare Reimbursement," discussed several alternative methods of coordinating the payment of medical benefits between Provident and Medicare. That document contains a list of nine insurance carriers supposedly contacted by Provident, and next to the names of three carriers is the phrase "Same as us." One of the three is the defendant BC–GA. Stinson Lyons argues that this phrase indicates that someone at BC–GA admitted to someone at Provident that BC–GA is also defrauding the government in precisely the same way as Provident.

Stinson Lyons instituted a *qui tam* action against Provident based on the documents it acquired in the *Leonard* litigation. *See United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life & Accident Ins. Co.,* 721 F.Supp. 1247 (S.D.Fla.1989) ("the *Provident* litigation"). Subsequently, armed only with the notation "Same as us," Stinson Lyons filed identical *qui tam* actions against BC–GA and the other two carriers mentioned. *See United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v.*

*Prudential Ins. Co. of Am.,* 736 F.Supp. 614 (D.N.J.1990); *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Pan American Life Ins. Co.,* No. 90–411 (E.D.La.).

## B. The FCA Generally

The purpose of the FCA is to recover money fraudulently taken from the government. *E.g., United States ex rel. Houck v. Folding Carton Admin. Comm.,* 881 F.2d 494, 504 (7th Cir.1989) (citing *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 551, 63 S.Ct. 379, 387, 87 L.Ed. 443 (1943)), *cert. denied,* —— U.S. ——, 110 S.Ct. 1471, 108 L.Ed.2d 609 (1990) [hereinafter *"Houck"*]. The FCA provides that, under certain circumstances, a private party— called a *qui tam* plaintiff or private citizen relator—may bring an action on the United States's behalf to recover fraudulently taken funds. *Houck,* 881 F.2d at 504; *see Avco Corp. v. United States Dep't of Justice,* 884 F.2d 621, 622 (D.C.Cir.1989). By allowing a *qui tam* plaintiff to share with the government any proceeds of the action, *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 1903 n. 11, 104 L.Ed.2d 487 (1989), the Act provides financial incentives to private parties to expose and prosecute fraud against government. *United States v. Burmah Oil Co.,* 558 F.2d 43, 45 (2d Cir.), *cert. denied,* 434 U.S. 967, 98 S.Ct. 511, 54 L.Ed.2d 454 (1977). In addition to a share in the proceeds, the FCA Amendments of 1986 now authorize awards of attorney's fees to prevailing *qui tam* plaintiffs. 31 U.S.C. § 3730(d)(1) (1988); *see* S.Rep. No. 345, 99th Cong., 2d Sess. 29, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5266, 5294. [hereinafter USCCAN].

By allowing certain private parties to sue on behalf of the government, the FCA creates a statutory exception to the general rule regarding standing to sue. *United States ex rel. Weinberger v. Equifax, Inc.,* 557 F.2d 456, 460 (5th Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978). Congress, in passing the FCA, conferred standing on *qui tam* plaintiffs by assigning to them a portion of

the government's interest in the action. *United States ex rel. Stillwell v. Hughes Helicopters, Inc.,* 714 F.Supp. 1084, 1098 (C.D.Cal.1989). *See generally* Comment, *The Standing of Qui Tam Relators Under the False Claims Act,* 57 U.Chi.L.Rev. 543 (1990). The FCA, as amended, however, does not confer this standing to sue on all private parties. Parties who fall within certain exceptions to the FCA may not initiate *qui tam* actions, for district courts have no jurisdiction over their claims:

**(e) Certain Actions Barred. ...**

.    .    .    .    .

(4)(A) No court shall have jurisdiction over an action under this section based upon the *public disclosure* of allegations or transactions *in a criminal, civil, or administrative hearing,* in a Congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e) (1988) (emphasis added).

BC–GA contends that this Court does not have jurisdiction because Stinson Lyons bases this action on information publicly disclosed "in a criminal, civil, or administrative hearing" within the meaning of the statute. It further contends that Stinson Lyons is not an "original source" exception. These contentions raise important questions of statutory construction of the FCA, as amended. Before the Court may address these questions, however, it must first determine whether, as BC–GA contends, Stinson Lyons is collaterally estopped from claiming that this Court has jurisdiction because the New Jersey federal

district court disclaimed jurisdiction in *Provident,* 736 F.Supp. 614 (D.N.J.1990).

## ANALYSIS

### A. Collateral Estoppel

Initially, BC–GA argues that Stinson Lyons is precluded from invoking the Court's jurisdiction because it "has already litigated and lost those same issues in New Jersey." It urges that for the Court to address the statutory issue of subject-matter jurisdiction is to condone forum-shopping by Stinson Lyons. BC–GA contends that the doctrine of collateral estoppel applies because the *Prudential* court faced the precise jurisdictional issue, involving Stinson Lyons, that is before this Court. Stinson Lyons argues in response that the *Prudential* court decided only "pure unmixed questions of law," and therefore the doctrine has no application here. Neither party is wholly correct.

■ For the proposition that the doctrine does not apply to pure unmixed questions of law, Stinson Lyons cites *United States v. Moser,* 266 U.S. 236, 242, 45 S.Ct. 66, 67, 69 L.Ed. 262 (1924). In *Moser,* the Supreme Court held that preclusion doctrine

does not apply to unmixed questions of law. Where, for example, a court in deciding a case has enunciated a rule of law, the parties in a subsequent action upon a different demand are not estopped from insisting that the law is otherwise, merely because the parties are the same in both cases.

266 U.S. at 242, 45 S.Ct. at 67. *Moser* involved res judicata, or claim preclusion, but the principle stated applied to issue preclusion as well. This aspect of *Moser,* however, has been modified. In *United States v. Stauffer Chemical Co.,* 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984), the Supreme Court stated that: "Our cases, however, recognize an exception to the applicability of the principles of collateral estoppel for 'unmixed question of law' arising in 'successive actions involving unrelated subject matter.'" *Id.* at 171, 104 S.Ct. at 579 (citations omitted). The majority continued:

[W]e agree that for the purpose of determining when to apply an estoppel, "when the claims in two separate actions *between the same* parties are not the same or closely related ... it is not ordinarily necessary to characterize an issue as one of fact or law for purposes of issue preclusion.... In such a case, it is *unfair to the winning party* and an unnecessary burden on the courts to allow repeated litigation of the same issue in what is essentially the same controversy, even if the issue is regarded as one of 'law.' "

*Id.* (quoting *Restatement (Second) of Judgments* § 28, Comment b (1982)) (emphasis added).

Although issue preclusion may apply to pure questions of law, it is less favored in that context than it is with mixed questions of law and fact, or pure factual matters. *Dorsey v. Solomon,* 435 F.Supp. 725, 742 (D.Md.1977), *modified on other grounds,* 604 F.2d 271 (4th Cir.1979). Issue preclusion is least favored where the pure question of law is one of statutory construction. *See International Union of Elec. Workers v. Westinghouse Elec. Corp.,* 19 Emp.Prac. Dec. (CCH) Para. 9144, p. 6931 n. 8 (D.N.J. 1979) (available on WESTLAW, 1979 WL 192, DCTU database).

■ Although the matter is not free from doubt, the Court will not estop the plaintiff from invoking the subject-matter jurisdiction of this Court. Collateral estoppel is a *discretionary* doctrine. *Brock v. Williams Enters., Inc.,* 832 F.2d 567, 574 (11th Cir.1987). A court is permitted to use collateral estoppel where: 1) the issue at stake was identical to the one involved in prior litigation; 2) the issue in the prior litigation was actually litigated; and 3) the determination of the issue in the prior litigation was a necessary and critical part of the judgment in that prior litigation. *E.g., Hicks v. Quaker Oats Co.,* 662 F.2d 1158, 1166 (5th Cir. Unit A Dec.1981). Notably, one of the primary policies served by collateral estoppel—that the winning party should not have to fight anew a battle it has already won, *see Stauffer Chem.,* 464 U.S. at 171, 104 S.Ct. at 578—is not applicable here. BC–GA was not a party to the *Prudential* litigation. *Cf. id.; United States v. Anaconda Co.,* 445 F.Supp. 486, 496 (D.D.C.1977). In addition, the issue urged to be precluded in this Court is a pristine question of law. *Cf. Dorsey,* 435 F.Supp. at 742; *Westinghouse Elec.,* 19 Emp.Prac.Dec. at p. 6931 n. 8. Last, BC–GA's fear that Stinson Lyons is engaging in forum-shopping does not apply; Stinson Lyons had filed this action long before the *Prudential* court rendered its decision. These circumstances all weigh against application of collateral estoppel doctrine in this instance. The Court will therefore proceed to the merits of BC–GA's motions.

**B. Motions to Dismiss**

■ Motions to dismiss under Fed.R. Civ.P. 12(b) may test several aspects of a plaintiff's case. Under Rule 12(b)(6), a motion to dismiss may raise the defense that the plaintiff has failed to state a claim upon which relief can be granted. A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. In essence, the movant says, "Even if everything you allege is true, the law affords you no relief." Consequently, in determining the merit of a Rule 12(b)(6) motion, a court is to assume that all of the factual allegations of the complaint are true. *Franklin v. Gwinnett County Pub. Schools,* 911 F.2d 617, 619 (11th Cir.1990); *Blum v. Morgan Guar. Trust Co.,* 709 F.2d 1463, 1466 (11th Cir. 1983).

■ In contrast, a Rule 12(b)(1) motion challenges the district court's subject-matter jurisdiction. A Rule 12(b)(1) motion can take either of two forms. One form is "a facial attack on the complaint, requiring the court merely to assess whether the plaintiff has alleged a sufficient basis of subject matter jurisdiction." *Oaxaca v. Roscoe,* 641 F.2d 386, 391 (5th Cir. Unit A April 1981) (citing *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980)). To weather this type of challenge, "[a] plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion ... is raised—the court must consider the allegations in the

plaintiff's complaint as true." *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 1981); *see also Oaxaca*, 641 F.2d at 391. The other form of a Rule 12(b)(1) motion is a *factual* attack on the subject-matter jurisdiction of the court. Such an attack "challenges the facts on which jurisdiction depends and matters outside of the pleadings, such as affidavits and testimony, are considered." *Oaxaca*, 641 F.2d at 391 (citing *Menchaca*, 613 F.2d at 511). Under a factual attack, the plaintiff bears the burden of proof that subject-matter jurisdiction exists. *Majd–Pour v. Georgiana Community Hosp.*, 724 F.2d 901, 903 (11th Cir.1984); *Menchaca*, 613 F.2d at 511.

In this case, BC–GA wields both forms of Rule 12(b)(1) motions: facial attack and factual attack. In addition, BC–GA contends that Stinson Lyons has not pleaded its allegations of fraud with the specificity required by Fed.R.Civ.P. 9(b). BC–GA argues that the complaint's lack of specificity calls for a dismissal, or, in the alternative, a more definite statement. The Court will address all of BC–GA's contentions, beginning, as it must, with the question of subject-matter jurisdiction. *See Jones v. State of Georgia*, 725 F.2d 622, 623 (11th Cir.) (court faced with motions to dismiss based on subject-matter jurisdiction and other grounds must address jurisdiction first), *cert. denied*, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 316 (1984).

## C. Subject–Matter Jurisdiction

In its factual attack on the Court's subject-matter jurisdiction, BC–GA argues that Stinson Lyons's complaint was based on information publicly disclosed "in a criminal, civil, or administrative hearing" and that the plaintiff is not an "original source" of that information within the meaning of section 3730(e)(4). As a result, maintains BC–GA, that section denies the Court jurisdiction in this case. The Court does not agree. Section 3730(e)(4) cannot support such an expansive reading.

### 1. *Statutory Construction in General*

■ To arrive at this result, the Court must undertake a rather detailed construc-

tion of section 3730(e)(4). In any exercise of statutory construction, a court's foremost duty is to give effect to the intent of Congress. *E.g., Solis–Ramirez v. United States Dept. of Justice*, 758 F.2d 1426, 1431 (11th Cir.1985); *Frey v. United States*, 558 F.2d 270, 272 (5th Cir.1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1487, 55 L.Ed.2d 517 (1978). The first step in performance of this duty is to look to the plain language of the statute. *E.g., Pennsylvania Dep't of Welfare v. Davenport*, —— U.S. ——, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990); *Hudgins v. City of Ashburn*, 890 F.2d 396, 405 (11th Cir.1989); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1559 (11th Cir. 1989). "Where the language of a statute is a clear expression of congressional intent [a court] need not resort to legislative history." *United States v. Rush*, 874 F.2d 1513, 1514 (11th Cir.1989). The search for legislative intent begins and ends with the language of a statute *unless:* (a) the language of the statute is ambiguous, *Alarcare Home Health Servs., Inc. v. Sullivan*, 891 F.2d 850, 856 (11th Cir.1990); (b) legislative history shows that Congress clearly expressed an intent contrary to the plain language of the statute, *id.; Hudgins*, 890 F.2d at 405; or (c) the apparent clarity of language leads to an absurd result when applied. *American Trucking Ass'n v. ICC*, 659 F.2d 452, 459 (5th Cir. Unit A Oct.1981), *cert. denied*, 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983).

■ A statute is not ambiguous merely because the parties disagree on its meaning. *In re George Rodman, Inc.*, 792 F.2d 125, 128 n. 8 (10th Cir.1986). Only inescapable ambiguity justifies a foray into legislative history. *Solis–Ramirez*, 758 F.2d at 1430; *United States v. Garcia*, 718 F.2d 1528, 1533 (11th Cir.1983), *aff'd*, 469 U.S. 70, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984). To discern whether Congress has clearly expressed an intent contrary to the plain language of a statute, a court must determine whether literal application of the statute will produce results "demonstrably at odds" with the intent of the drafters. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103

L.Ed.2d 290 (1989). This will occur only when, at minimum, there is "some clear indication of congressional intent, either in the legislative history or in the structure of the statute, that informs the *specific language in question.*" *Consolidated Rail Corp. v. United States*, 896 F.2d 574, 578 (D.C.Cir.1990) (emphasis added). As the Supreme Court has acknowledged, such cases are rare. *Ron Pair Enters.*, 489 U.S. at 242, 109 S.Ct. at 1031; *Consolidated Rail*, 896 F.2d at 578. "[O]nly the most extraordinary showing of contrary intentions ... would justify [alteration of] the 'plain meaning' of the statutory language." *Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984); *see Bailey v. USX Corp.*, 850 F.2d 1506, 1509 (11th Cir.1988). In the end, "*[c]lear evidence* of legislative intent prevails over other principles of statutory construction." *E.g., Neptune Mut. Ass'n, Ltd. v. United States*, 862 F.2d 1546, 1549 (Fed.Cir.1988) (emphasis added); *Johns–Mansville Corp. v. United States*, 855 F.2d 1556, 1559 (Fed. Cir.1988), *cert. denied*, 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989) (both cases citing *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974)).

### 2. *"Public Disclosure of Allegations and Transactions in a Criminal, Civil, or Administrative Hearing"*

■ BC–GA argues that Stinson Lyons bases this action upon a "public disclosure of allegations or transactions in a criminal, civil, or administrative hearing." 31 U.S.C. § 3730(e)(4)(A). BC–GA further argues that Stinson Lyons is not an "original source" of the information upon which this suit is based, within the meaning of section 3730(e)(4)(B). If BC–GA is right, then the Court has no jurisdiction over this action. In support of its argument, BC–GA relies heavily upon the recent decision of the U.S. District Court for the District of New Jersey in *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Insurance Co. of Am.*, 736 F.Supp. 614 (D.N.J.1990) (*"Prudential"*). In *Prudential*—a case factually and legally indis-tinguishable from this one—the district court held that, under its construction of section 3730(e), Stinson Lyons received its information regarding fraud via a "public disclosure ... in a ... civil ... hearing." The *Prudential* court also held that Stinson Lyons was not an "original source" of that information within the meaning of the statute. The court thus concluded that it did not have subject-matter jurisdiction over the action.

At issue in *Prudential* was another "same as us" insurer that Stinson Lyons had stumbled across during the *Leonard* litigation. BC–GA argues that the *Prudential* court decided the jurisdictional issue correctly; Stinson Lyons argues that the *Prudential* court's statutory construction was flawed. For different reasons, the Court agrees with Stinson Lyons contention. Stinson Lyons and BC–GA both hurl bits of legislative history at each other, but it is unnecessary, however, to reach much further than the plain language of the statute.

■ In determining the meaning of statutory language, the "plain meaning" of the words employed is informed by the object and policy of the legislation. *E.g., Crandon v. United States*, —— U.S. ——, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990). Section 3730's jurisdictional edicts were part of the 1986 Amendments to the FCA. The clear statutory policy behind the 1986 Amendments was "not only to provide the Government's law enforcers with mere effective tools, but to *encourage any individual knowing of Government fraud to bring that information forward.*" USCCAN at 5266–67 (emphasis added). As noted above, this policy provides the background against which the Court reads the section's language. The Court starts its determination of Congress's intent in section 3730(e)(4) with the language of the provision. *Hudgins*, 890 F.2d at 405; *Cabalceta*, 883 F.2d at 1559. Congress's use of the word "hearing" is telling. "Where Congress uses terms that have a settled meaning under ... common law, a court *must* infer, unless the statute otherwise dictates, that Congress meant to incorpo-

rate the established meaning of these terms." *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981) (emphasis added); *United States v. Patterson*, 882 F.2d 595, 603 (1st Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 737, 107 L.Ed.2d 755 (1990); *United States Dept. of Health & Human Servs. v. Smith*, 807 F.2d 122, 124 (8th Cir.1986); *see also Tafoya v. United States Dept. of Justice*, 748 F.2d 1389, 1392 (10th Cir.1984). Black's Law Dictionary (5th ed. 1979) defines "hearing" as:

Proceeding of relative formality (thought generally less formal than a trial), generally public, with definite issues of fact or law to be tried, in which witnesses are heard and parties proceeded against have right to be heard, and is much the same as a trial and may terminate in a final order. It is frequently used in a broader and more popular significance to describe whatever takes place before magistrates clothed in judicial functions and sitting without a jury at any stage of the proceedings subsequent to its inception, and to hearings before administrative agencies as conducted by a hearing examiner or Administrative Law Judge.

*Id.* at 649. Webster's Ninth New Collegiate Dictionary defines "hearing" as: "b (1): a listening to arguments, (2): a preliminary examination in criminal procedure, c: a session (as of a legislative committee) in which witnesses are heard and testimony is taken." *Id.* at (9th ed. 1985). The *Prudential* court found (and BC–GA concurs) that, to read the word "hearing" as synonymous with "proceeding" broadens the jurisdictional bar of section 3730(e)(4). *See Prudential*, 736 F.Supp. at 620. This, by itself, is unremarkable. Read against the "object and policy" of the 1986 Amendments, however, it is clear that such a strained reading of "hearing" contravenes that policy—to encourage people with direct knowledge of fraud perpetuated

against the government to blow the whistle. BC–GA argues, and the *Prudential* court reasoned, that to adhere to the settled meaning of "hearing" would result in a more expansive reading of a district court's jurisdiction. The *Prudential* court noted that such a reading would "comport" less well with the jurisdictional limitations of federal courts. *Id.* This general policy, which vaguely invokes the specter of Article III of the Constitution, is insufficiently related to the specific jurisdictional provision at hand to shake the word "hearing" loose from its plain meaning.[1] *See Crandon*, 110 S.Ct. at 1001.

The *Prudential* court and BC–GA point to isolated portions of the Senate Judiciary Committee Report which decry "windfalls" to certain *qui tam* plaintiffs and "parasitic" litigation. Although Congress was somewhat concerned with such problems, there is no reason to think that Congress did not strike the balance it thought appropriate between that concern and its stated purpose to expose and curb government fraud. Even if the Court believed that the language Congress employed failed to balance these competing concerns optimally, the Court would not be free to substitute its judgment for that of the people's elected representatives. It is Congress's job, not the courts', to weigh competing concerns and create legislation to reflect the proper balance between them. *See In re Davis*, 911 F.2d 560, 562 (11th Cir.1990).

BC–GA makes strained attempts to show that according to the word "hearing" its plain and settled meaning would mean various "absurd" results within the FCA. The court in *Prudential* used this reasoning as well. The specifics of these unpersuasive arguments need not be repeated here. None of the claimed inconsistencies rises to the level of an "absurdity." The Court declines BC–GA's request to tinker with the statute.

---

1. It is also worth noting that Article III states: "The judicial power of the United States, shall be vested in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Congress must define the jurisdiction of the district courts, *see*

*Sheldon v. Sill,* 8 How. 441, 448–49, 12 L.Ed. 1147 (U.S. 1850), and has done so here. This Court may thus refashion this jurisdictional grant only if the grant violates some other constitutional provision. It does not.

A literal reading of the commonly used term "hearing" is not "demonstrably at odds" with Congress' overarching concern to curb government fraud tempered with a desire not to create windfalls for opportunistic litigants. *See Ron Pair Enters.*, 489 U.S. at 242, 109 S.Ct. at 1031. Passing reference to avoiding "windfalls" to *qui tam* plaintiffs does not evidence "only the most extraordinary showing of contrary intentions." *See Garcia*, 469 U.S. at 75, 105 S.Ct. at 482. Nor does the plain meaning of the statute lead to absurd results. *See American Trucking*, 659 F.2d at 459. Quite the opposite, it is difficult to call the balance struck by Congress anything but reasonable, even if that were the province of the courts. Congress easily could have said "proceeding" if it meant "proceeding." *See In re Davis*, 911 F.2d at 562. The Court concludes that Congress meant what it said: a "hearing" is some sort of live, relatively formal proceeding before a decisionmaking body, with question of law or fact to be tried. Because Stinson Lyons received the information upon which they based this action through traditional discovery requests in the *Leonard* litigation, it was not disclosed publicly in a "hearing." The Court holds that the jurisdictional bar of Section 3730 does not apply in this case.

■ This holding effectively disposes of BC–GA's statutory contention. Nevertheless, the Court feels compelled to address briefly two other aspects of section 3730(e)(4)'s language. First, the *Prudential* Court held, and BC–GA echoes, that the phrase "public disclosure" [is] "not specifically limited by the enumerated examples in the remainder of the statute." *Prudential*, 736 F.Supp. at 621. The Court disagrees. Section 3730(e)(4)(A) states, in relevant part: "No court shall have jurisdiction over any action under this section based upon the public disclosure of allegations and transactions in a criminal, civil, or administrative hearing." The plain meaning of the statute compels the conclusion that the language following the term "public disclosure" *does* limit that phrase. *See United States ex rel. LeBlanc v. Raytheon Co.*, 913 F.2d 17, 20 (1st Cir.1990). There is no evidence that Congress intended any-

thing other than the plain meaning of this limiting language. Nor is there any evidence that the plain meaning is "demonstrably at odds" with Congress's intent. To reject the plain meaning of the statute in this circumstance would be a usurpation of Congress' power to legislate. *See In re Davis*, 911 F.2d at 562. The Court declines the invitation to use "statutory construction" to do so.

Second, the *Prudential* court held, and BC–GA urges here, that "public disclosures" include receipt of documents pursuant to discovery requests in civil litigation between private parties. Stinson Lyons argues that "public disclosures" only occur in a proceeding in which the *government* discloses the information. In support, it points to snippets of legislative history and vague dicta in several district court decisions. BC–GA on the other hand, rests its reading on "plain language." Neither argument is compelling, and the question appears to be a close one. Given the Court's holding that section 3730(e)(4)(A) does not bar this action because the information upon which Stinson Lyons bases this suit was not disclosed at a "hearing," the Court will not enter this intriguing, but unnecessary, thicket.

### 3. *"Original Source"*

■ Assuming arguendo that BC–GA's reading of the phrase "based upon the public disclosure of allegations or transactions in a ... civil ... hearing" is correct, the Court would not have jurisdiction in this case. Although there is an exception to section 3730(e)(4)(A)'s jurisdictional bar for parties who are "original sources" of the information, that exception does not apply to Stinson Lyons. Section 3730(e)(4)(B) defines "original source": "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B).

BC–GA argues that Stinson Lyons cannot claim the benefit of this exception be-

cause it obtained the information on which it bases the complaint through discovery in an unrelated case. The *Prudential* court agreed with this position; and held:

> In this case, the information obtained by the law forum cannot be characterized as direct. This information was supposedly obtained by a Provident employee and then furnished to the law firm during discovery. In the discovery process, the law firm was not seeking information concerning [BC–GA's] claim processing procedures, it merely "stumbled" across a seemingly incriminating notation.... The Court finds that the law firm's knowledge of the pertinent information was gained merely by the fact that it was publicly disclosed, not by virtue of any direct relationship to, or interest in [BC–GA's] claims procedures.

> .    .    .    .    .

> Nor can plaintiff's knowledge of the information upon which this claim is based be characterized as independent, or flowing from a "source" independent of the public disclosure. There is nothing in the record to indicate that plaintiff would have learned anything about [BC–GA], but for the Provident disclosure.

*Prudential,* 736 F.Supp. at 622–23. This Court agrees. Thus, in the unlikely situation that section 3730(e)(4)(A)'s public disclosure bar be read to encompass Stinson Lyons's claim, then it would not be exempt as an "original source." This Court would have no jurisdiction over the claim.

D. Sufficiency of the Allegations of FCA Violations to Invoke the Court's Jurisdiction

■ BC–GA argues that the information that Stinson Lyons presently possesses is insufficient to invoke this Court's subject-matter jurisdiction. In other words, BC–GA claims that Stinson Lyons has no *evidence* to back up its allegations. A motion to dismiss for lack of subject-matter jurisdiction is not, however, the proper vehicle to make this challenge. As mentioned earlier, in determining the merits of a facial attack on the complaint, the court merely inquires whether "plaintiff has sufficiently alleged a basis of subject-matter jurisdiction." *Menchaca,* 613 F.2d at 511; *Oaxaca,* 641 F.2d at 391. In making this determination, the Court *must* take the allegations of the complaint as true. *Menchaca,* 613 F.2d at 511; *Oaxaca,* 641 F.2d at 391. "A complainant is not required to plead evidence." *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). The proper context in which BC–GA should make this argument is summary judgment. If BC–GA prevails on summary judgment, it may wish also, if it appears appropriate, to move for sanctions or attorney's fees under Rule 11 or 31 U.S.C. § 3730(d)(4) on this ground. But these arguments cannot be made now. Taking the allegations of Stinson Lyons complaint as true, the Court holds that BC–GA's motion to dismiss for facial insufficiency of the complaint's basis for subject-matter jurisdiction must fail.

E. Failure to Plead Fraud with the Requisite Particularity

■ Describing Stinson Lyons's complaint as "fact-starved," BC–GA has moved to dismiss on the ground that Stinson Lyons has failed to comply with the particularity requirements of Fed.R.Civ.P. 9(b). In the alternative, BC–GA has asked for a "more definite statement" for the same reason. The Court agrees that Stinson Lyons has not met the requirements of Rule 9(b). Because, however, Stinson Lyons has not yet had an opportunity to amend its complaint to comply with the Rule's dictates, the Court orders that the firm may have 15 calendar days from the date of entry of this order to bring its complaint into compliance with that rule. It may not, however, engage in discovery in the interim; the Court's stay of discovery, entered August 10, 1990, remains in effect.

■ Rule 9(b) of the Federal Rules of Civil Procedure requires that: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This requirement of particularity, however, must be

read in harmony with Rule 8's directive that a plaintiff's claims be "short and plain." *E.g., Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir.1988); *Friedlander v. Nims*, 755 F.2d 810, 813 n. 3 (11th Cir.1985); *Schlick*, 507 F.2d at 379. In the usual case, "[t]o pass muster under rule 9(b), the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation." *E.g., Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir.1990); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). "Thus, pleadings generally cannot be based on information and belief." *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1003 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988). Where, however, this factual information is peculiarly within the defendant's knowledge or control, rule 9(b)'s requirement is relaxed somewhat. *E.g., Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990); *In re Craftmatic Secs. Litig.*, 890 F.2d 628, 645 (3d Cir.1989). In such a case, pleading on information and belief is acceptable, *Wexner*, 902 F.2d at 172; *Stern*, 844 F.2d at 1003, but on one condition: the "complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Wexner*, 902 F.2d at 172; *see Craftmatic*, 890 F.2d at 645 ("[E]ven under a nonrestrictive application of the rule, pleaders must allege that the necessary information lies within the defendant's control, and then allegations must be accompanied by a statement of facts upon which the allegations are based.") (citations omitted). These facts must amount to more than the "mere suspicion that a fraud may have occurred." *Brickman v. Tyco Toys, Inc.*, 722 F.Supp. 1054, 1060 (S.D.N.Y.1989). Bald or otherwise conclusory allegations will not suffice. *Stern*, 844 F.2d 1004. The "supporting facts on which the belief is founded must be set forth in the complaint." *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir.1985). And the complainant must be able to connect the allegations of fraud to the defendant. *E.g., DiVittorio*,

822 F.2d at 1249; *Kuczynski v. Ragen Corp.*, 732 F.Supp. 378, 383 (S.D.N.Y.1989).

BC–GA argues that Stinson Lyons has presented *no facts* which support an inference of fraud. The Court agrees. Stinson Lyons's complaint essentially recounts the procedures it alleged to be employed by Provident in the *Leonard* litigation, and attributes these procedures to BC–GA. Although the allegations of the type of scheme used by BC–GA are detailed, Stinson Lyons has provided no allegations of *facts* that would support its ultimate claim that BC–GA did, in fact, employ the scheme. Stinson Lyons insists that its description of the mechanism of the scheme satisfies rule 9(b) in this situation. In support, it notes that the *Provident* court so held. *See* 721 F.Supp. at 1258. That decision, however, differs from the present case in one crucial respect: the allegations in the *Provident* case were derived from Provident documents; the allegations against BC–GA here were not derived from BC–GA documents, but from Provident documents, as well. What Stinson Lyons is attempting to do here is analogous to describing the elements of a crime (vehicular manslaughter, for example) and then picking a citizen at random, and charging him with the crime.

The Court holds that Stinson Lyons has failed to satisfy even a relaxed Rule 9(b) standard. Stinson Lyons has pointed to no evidence, except the cryptic "same as us" notation, that even mentions BC–GA. That notation does not indicate what question it answers. That notation does not indicate who asked the question. That notation does not indicate who answered the question, or even if the person who answered works for BC–GA. The clear intent of Rule 9(b) "is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed." *Friedlander*, 755 F.2d at 813 n. 3. "A complaint alleging fraud should be filed only after a wrong is *reasonably* believed to have occurred; it should serve to seek redress for a wrong, *not to find one.*" *Segal v. Gordon*, 467 F.2d 602, 607–08 (2d Cir.1972) (emphasis added); *Jordon v. New York Mercantile Exchange*, 571 F.Supp.

1530, 1543 n. 5 (S.D.N.Y.1983), *modified on other grounds*, 735 F.2d 653 (2d Cir.1984). *See Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.1985) ("the rule does not permit a complainant to file suit first, and subsequently to search for a cause of action").

■ Stinson Lyons argues that it has met the requirements of Rule 9(b) because its detailed picture of the alleged scheme perpetrated against the government put BC–GA on notice "as to the conduct which Plaintiff asserts is a violation of the FCA." Stinson Lyons asserts that Rule 9(b) is intended to put defendants on notice as to the conduct complained of so that they have sufficient information to formulate a defense. That statement is correct, as far as it goes. Rule 9(b), however, has other important purposes as well. It "exists primarily to protect defendants from frivolous suits." *LaRoe v. Elms Secs. Corp.*, 700 F.Supp. 688, 694 (S.D.N.Y.1988). It also exists also "to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed." *Friedlander*, 755 F.2d at 813 n. 3. Another purpose of the rule is to protect a defendant from harm to its goodwill or reputation. *E.g., Stern*, 844 F.2d at 1003; *DiVittorio*, 822 F.2d at 1247. Stinson Lyons's complaint serves only one of those purposes—it puts BC–GA on notice of the complained of conduct. But the lack of an factual basis to connect BC–GA to the scheme Stinson Lyons has constructed does not ensure that this suit is not frivolous as to BC–GA. Nor does that lack of factual basis for the complaint ensure that BC–GA's "reputation and goodwill" will remain protected. In sum, Stinson Lyons has not supplied a factual basis to raise any inference of fraud as to BC–GA, let alone a strong one. *See Wexner*, 902 F.2d at 172; *Ouaknine*, 897 F.2d at 81; *Craftmatic*, 890 F.2d at 645. Thus, Stinson Lyons has not satisfied Rule 9(b).

Nevertheless, the Court will not dismiss the complaint. Stinson Lyons must be given an opportunity to bring its complaint into compliance with the rule. *See, e.g., Craftmatic*, 890 F.2d at 646; *Hayduk*, 775 F.2d at 445. It may not, however, engage in discovery to unearth additional facts to support its complaint. *See Friedlander*, 755 F.2d at 813 n. 3; *see also Hayduk*, 775 F.2d at 443; *Segal*, 467 F.2d at 607–08.

## F. The Notification Requirement

■ BC–GA contends that Stinson Lyons failed to comply with section 3730(b)(2)'s requirement that it provide the government with "substantially all material evidence and information" it possessed relating to this action at the time it filed the complaint. Stinson Lyons responds that it had previously supplied the government with all such evidence when it provided the government the evidence it possessed in the *Provident* litigation. Since that is all the evidence it has against BC–GA, Stinson Lyons argues, all it needed to do when it filed this action was to notify the government that it was relying on that evidence in proceeding against BC–GA, too. Stinson Lyons notes that the apparent purpose of this section is to provide the government with enough information to allow it to make an informed decision whether to intervene in the suit pursuant to its powers under that section.[2] *See United States ex rel. Woodard v. Country View Care Center*, 797 F.2d 888, 892 (10th Cir. 1986) (dealing with pre–1986 FCA Amendments provision). Because the United States was previously supplied with the sum total of all Stinson Lyons evidence against BC–GA, and because the United States, by notice filed March 29, 1990, in fact declined to intervene in this action, Stinson Lyons concludes that the notification requirement was met, and its key underlying policy fulfilled. BC–GA argues that this is immaterial. It views as dispositive the fact that, even though the government already had all the information rele-

---

**2.** Section 3730(b)(2) provides, in pertinent part:
  A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule

4(d)(4) of the Federal Rules of Civil Procedure.... The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

vant to this action, and even though the government, after requesting and receiving two extensions totalling 90 days, in fact declined to intervene, Stinson Lyons failed to comply with the *letter* of the section. In support of their argument—which Stinson Lyons views as "very technical"—BC–GA cites *United States ex rel. Texas Cement Co. v. McCord,* 233 U.S. 157, 162–63, 34 S.Ct. 550, 552–53, 58 L.Ed. 893 (1914). BC–GA says *Texas Cement* stands for the broad proposition that a party pursuing a statutory remedy must comply perfectly with all the procedures the statute mandates. *See Erickson, ex rel. United States v. American Inst. of Biol. Sciences,* 716 F.Supp. 908, 911 (E.D.Va.1989). As it applies to *qui tam* actions, BC–GA argues that "*[q]ui tam* relators must comply with mandatory filing and service requirements." *See id.*

The Court sees no reason to demand letter-perfect compliance with the provision in a case, such as this one, where the object of the provision is fulfilled by alternate means, the government has not been harmed thereby, and the government has not even raised the objection. Moreover, because this section plainly inures to the benefit of the government, the Court does not see how BC–GA has standing to make this argument. *Cf. Brown v. Braddick,* 595 F.2d 961, 967 (5th Cir.1979) (absent valid claim of personal right or privilege, a party to an action lacks standing to challenge subpoena duces tecum served on non-party). Even if BC–GA did have standing to make this argument, the Court views BC–GA's reading of *Texas Cement* as over-broad. The Court reads *Texas Cement*[3] for the narrower proposition that a *right or remedy* created by statute may not be expanded beyond its statutory *limits.* The

notification provision at issue here is neither a right or a remedy. It is an ancillary procedural requirement of the exercise of the right created by the statute. Although as a general proposition the Court agrees with BC–GA, the facts of this case do not demand rigid adherence to the general rule. *Cf. Erickson,* 716 F.Supp. at 912 (sensible distinctions should be drawn between cases in which "filing and service requirements can be cured and those in which they cannot"); *see generally General Serv. Employees Union v. NLRB,* 578 F.2d 361, 366 (D.C.Cir.1978) ("A statute is not to be read *over* literally.... [A]cts of Congress must be interpreted in light of the spirit in which they were written and the reasons for their enactment.") (emphasis added, footnote omitted).

### CONCLUSION

For the reasons stated above, the Court holds that it does have subject-matter jurisdiction over this action. Stinson Lyons, however, has not pleaded its allegations of fraud with the particularity required by Rule 9(b). Before the Court can dismiss an action on that ground, it must give the plaintiff an opportunity to address the insufficiency. Consequently, the Court DENIES BC–GA's motion to dismiss to the extent that it is based on lack of subject-matter jurisdiction. To the extent that BC–GA's motion to dismiss is based on Rule 9(b) lack of particularity, its motion to dismiss is DENIED WITHOUT PREJUDICE. The Court, however, GRANTS BC–GA's motion for a more definite statement. Accordingly, the Court also ORDERS that:

(1) Stinson Lyons submit an amended complaint which meets the Rule 9(b) particularity requirement, fifteen (15)

---

**3.** The pertinent passage in *Texas Cement* reads:
By this statute a right of action upon the bond is created in favor of certain creditors of the contractor. The cause of action did not exist before and is the creature of the statute. The act does not place a limitation upon a cause of action theretofore existing, but creates a new one upon the terms named in the statute. The right of action given to creditors is specifically conditioned upon the fact that no suit shall be brought by the United States

within the six months named, for it is only in that event that the creditors shall have a right of action and may bring suit in the name provided. The statute thus creates a new liability and gives a special remedy for it, and upon settled principles the *limitations* upon such liability become a part of the right conferred and compliance with them is made essential to the assertion and benefit of the liability itself.
*Texas Cement,* 233 U.S. at 162, 34 S.Ct. at 552.

calendar days from the date of this Order;

(2) the Court will automatically re-evaluate BC–GA's motion to dismiss on Rule 9(b) grounds upon timely receipt of Stinson Lyons's amended complaint; and

(3) discovery is to remain stayed until further order of this Court.

SO ORDERED.