**UNITED STATES of America ex rel., F. Kevin BUTLER, Plaintiffs,**

v.

**MAGELLAN HEALTH SERVICES, INC., a/k/a Charter Medical Corporation, et al., Defendants.**

No. 97–1925–CIV–T–17B.

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 5, 1999.

1202

Jay G. Trezevant, U.S. Attorney's Office, Tampa, FL, Andrew Grosso, Law Office of Andrew Grosso, Washington, DC, for U.S.

Todd Alan Foster, Cohen, Jayson & Foster, Tampa, FL, Andrew Grosso, Law Office of Andrew Grosso, Washington, DC, for F. Kevin Butler.

James J. Kennedy, III, Buchanan Ingersoll, P.C., Tampa, FL, for Magellan Health Services, Inc., Charter Medical Corp., Charter Behavioral Health System of Tampa Bay, Inc., Florida Health Facilities, Inc., Charter Glades Behavioral System, Inc., Charter Springs Behavioral Health System, Inc., Charter Kissimmee Behavioral Health System, Inc., Charter Behavioral Health System at Manatee Adolescent Treatment Service, Inc. and Charter Behavioral Health System of Bradenton, Inc.

Gregg Darrow Thomas, David S. Bralow, Kimberly A. Stott, Holland & Knight, LLP, Tampa, FL, for Tribune Co.

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

KOVACHEVICH, Chief Judge.

This cause is before the Court on Defendants' Motions to Dismiss Plaintiff's Amended Complaint (Dkts.48, 50), and responses. The Court also has for consideration a Motion for Leave to File Reply (Dkt.62).

### STANDARDS

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Interfase Marketing Inc. v. Pioneer Technologies Group*, 774 F.Supp. 1355, 1356 (M.D.Fla.1991).

### FACTS

This action is brought by Dr. Kevin Butler under the "qui tam" provision, 31 U.S.C. 3730, of the False Claims Act (FCA), 31 U.S.C. §§ 3729–3733 (1994), alleging fraud on the part of the Defendants, Magellan Health Services, Inc., Charter Behavioral Health System of Tampa Bay, Inc., Charter Glades Behavioral Health System, Inc., Ft. Myers, Florida, Charter Springs Health System, Inc., Ocala, Florida, Charter Kissimmee Behavioral Health System, Inc., Orlando Florida, Charter Behavioral System at Manatee Adolescent Treatment Service, Inc., Charter Behavioral Health System of Bradenton, Inc., and Florida Health Facilities, Inc.

Plaintiff was employed as the Medical Director of the Charter Behavioral Health Center System of Tampa Bay, Inc. and as Regional Medical Director for Texas Magellan Health Service, Inc.

Plaintiff alleges that Defendants submitted fraudulent claims to the United States Department of Health and Human Services (HHS) under the Medicare program, and to the Department of Defense (DOD) through the Civilian Health and Medical

Program of the Uniformed Services (CHAMPUS), to obtain benefits and accreditation to which they were not entitled. Plaintiff additionally alleges Defendants fraudulently extended and reduced the duration of patient stays without regard to medical necessity, presenting false certifications to HHS and DOD to augment benefits and obtain selected state accreditations. Further, Dr. Butler asserts that the Defendants encouraged unnecessary patient admissions by waiving Medicare deductibles and CHAMPUS co-payments, then submitting false claims derived from the unnecessary admissions. As a result of Plaintiff's refusal to participate in the system, Plaintiff charges that Defendants implemented a business strategy with the intent to divide him from his position, finally resulting in his constructive discharge.

Plaintiff and his company, Behavioral Healthcare Options, Inc. (BHO) filed suit in state court on March 16, 1994, against Charter Medical Corporation and its parent company, Magellan Health Services, on claims of breach of contract, tortious interference with contract, and breach of covenant of good faith and fair dealing.

On March 17, 1994, the following day after filing his state claim, Plaintiff held a press conference announcing the suit, naming one of the Defendants in this qui tam complaint as effectuating a "heads on the beds" (taken to mean provoking inappropriate admissions and demanding physicians not release patients who had insurance benefits regardless if the patient required hospitalization) policy to maximize profits. He also alleged Charter guaranteed some of the Physicians salaries in return for the referral of patients needing inpatient treatment. See Jeff Testerman, Doctor Sues Charter of Tampa Bay, St. Petersburg Times, March 17, 1994 at 1B, available in 1994 WL 4786478. "The doctor's allegations are contained in a civil lawsuit filed in Hillsborough Circuit Court on Wednesday accusing the hospital of fraud and breach of contract." See id. Three years after instituting the state court suit, which has teen largely dis-

missed, Plaintiff filed this qui tam action under seal as required by the statute, pending a decision by the Department of Justice on whether or not to intervene. On November 13, 1998, the Government elected not to intervene in this action. See United States' Notice of Election to Decline Intervention, Nov. 13, 1998 (Dkt.40).

Plaintiffs filed the Amended Complaint (Dkt.38) on September 15, 1998, alleging that Defendants defrauded the United States by tendering fraudulent claims to the United States Department of Health and Human Services Medicare Program and the Department of Defense Civilian Health and Medical Program of the Uniformed Services to maximize insurance benefits by stretching or reducing the duration of patients' hospitalization without regard for medical necessity and by encouraging unnecessary patient admissions.

## DISCUSSION

### I. The False Claims Act

The chronicles and intricate policy goals behind the FCA's qui tam provision have been recited by numerous courts. See, e.g., U.S. ex rel. Findley v. FPC-Boron Employees' Club, 105 F.3d 675, 679–81 (D.C.Cir.1997); U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 649–52. Also known as the Lincoln Law, the aim of the FCA is to recover money fraudulently taken from the government. United States ex rel. Marcus v. Hess, 317 U.S. 537, 551, 63 S.Ct. 379, 387, 87 L.Ed. 443 (1943). A Civil War statute passed in 1863, President Lincoln sought such a law as a weapon to weed out fraud against the federal government and punishing fraudulent claims of war profiters. United States ex rel. Williams v. NEC Corp., 931 F.2d 1493, 1497 (1991). It provided for criminal and civil penalties for submitting a false claim to the United States. See S.Rep. No. 99–345, at 8 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5273. At inception, the FCA contained a qui tam provision allow-

ing a private party to bring an action alleging fraud upon the government.

The statute has since been amended twice in its 136 year history, once in 1943 and mere recently in 1986, in response to alarming court decisions. In *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), the Supreme Court permitted a qui tam suit based entirely on information assembled from a public criminal indictment to which defendants already had pleaded nolo contendere. See *Quinn,* 14 F.3d at 649–50; see also S.Rep. No. 345, 99th Cong., 2d Sess. 10, reprinted in 1986 U.S.C.C.A.N. at 5275. The case was typical of a growing tide of opportunistic lawsuits filed in the 1930's and 1940's. Reacting to *Marcus,* Congress immediately amended the FCA in 1943 to prevent all qui tam suits based on information in the possession of the federal government. *Williams,* 931 F.2d at 1497. The 1943 amendments to these provisions, signed into law by President Roosevelt on December 21, 1943, codified the restrictions. See S.Rep. No. 345, 99th Cong., 2d Sess. 12, reprinted in 1986 U.S.C.C.A.N. at 5277. However, by barring even those qui tam suits brought by individuals who themselves gave information of fraud to the government, Congress eliminated the financial incentive to come forward in the first place.

Again Congress responded to a troubling court decision in *United States ex rel. Wisconsin v. Dean,* 729 F.2d 1100, 1104 (7th Cir.1984). The *Dean* decision showed that "Congress, in its attempt to evade Scylla, had steered precipitously close to Charybdis." *Springfield Terminal,* 14 F.3d at 650. The Seventh Circuit prohibited a qui tam action by the state of Wisconsin because Wisconsin had conducted a large scale Medicaid fraud investigation and had conveyed that fraud to the Federal government as required by its reporting process. The Seventh Circuit held Wisconsin's action was barred because the Government already possessed the information upon which the complaint was based. See id.

Trying to find a middle line, the 1986 amendments "sought to resolve the tension between ... encouraging people to come forward with information and ... preventing parasitic lawsuits." *Cooper ex rel. United States v. Blue Cross and Blue Shield of Florida, Inc.,* 19 F.3d 562, 565 (11th Cir.1994) (citations omitted). The amendments endeavored to refresh qui tam suits by private individuals, to strengthen the Government's ability to prosecute fraud by government contractors, and to expose fraud against the government. *United States v. NEC Corp.,* 11 F.3d 136, 139 (11th Cir.1993). Congress repealed the "government knowledge" jurisdictional bar, and alternatively enacted narrow exceptions to qui tam jurisdiction.

In effect, the 1986 modifications broadened the qui tam provisions, rewarding private individuals who take personal risks in exposing wrongdoings, breaking conspiracies of silence among employees of malfeasors, and to promote whistleblowing. See S.Rep. No. 99–345, at 14 (1986); *United States and Eunice Mathews v. Bank of Farmington,* 166 F.3d 853, 858 (1999). In addition to a share in the proceeds, the FCA Amendments of 1986 authorize awards of attorney's fees to prevailing qui tam plaintiffs. 31 U.S.C. § 3730(d)(1) (1988); see also S.Rep. No. 345, 99th Cong., 2d Sess. 29, reprinted in 1986 U.S.Code Cong. & Admin. News 5266, 5294.

The current qui tam provisions of the False Claims Act authorize both the United States Attorney General or private persons with personal knowledge of fraud against the government to bring a civil action as a "relator," acting on behalf of the United States government, and to share in the proceeds for his or her efforts. See 31 U.S.C. 3730(b); *Hughes Aircraft Co. v. U.S. ex rel. Schumer,* 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997). The Government may recover treble damages for fraud committed against the Government should it choose to intervene, simultaneously awarding the relator no less

than fifteen and no more than twenty-five percent of the ultimate bounty. 31 U.S.C. § 3730(d)(1) (1994). Should the Government choose not to take over the action, the relator "shall have the right to conduct the action" and receive twenty-five to thirty percent of the monies recovered. 31 U.S.C. § 3730(b)(4)(B)–(d)(2) (1994). In cases where the Government elects not to intervene, as in the instant case, the court "may nevertheless permit the Government to intervene at a later date upon a showing of good cause." Id. 3730(c)(3).

Although the Act permits any person to initiate a qui tam action, it precludes actions based upon allegations or transactions disclosed through specifically enumerated means. By allowing certain private parties to sue on behalf of the government, the FCA creates a statutory exception to the general rule regarding standing to sue. *United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456, 460 (5th Cir.1977), cert. denied, 434 U.S. 1035, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978).

The FCA, as amended, however, does not confer this standing to sue on all private parties. Parties who fall within the certain exceptions to the FCA may not initiate qui tam actions, for district courts have no jurisdiction over their claims. 31 U.S.C. § 3730(e)(4) provides for a jurisdictional bar in three circumstances where public disclosure occurs:

(4)(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal civil or administrative hearing, in a congressional, administrative, or General Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(4)(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. Section 3730(e)(4)(A) and (B) (1994).

Defendant argues that the allegations upon which Plaintiff's action is based were publicly disclosed, both in the state civil litigation as well as in the news media, and that Defendant's qui tam action is "based upon" those publicly disclosed allegations. Defendant further contends that Dr. Butler is not an "original source" of the allegations. Defendant also argues that this Court lacks jurisdiction over an action brought by private plaintiffs on behalf of the United States where the United States has declined to intervene and questions the Constitutionality of qui tam provisions.

Defendant's Alternative Motion to Dismiss Amended Complaint asserts that Plaintiff has failed to plead fraud with particularity as required by the Federal Rules of Civil Procedure, and has therefore failed to state a claim under the False Claims Act.

II. Jurisdiction

■ The relator bears the burden of proving that a court has jurisdiction over a case. In the Eleventh Circuit, a constructive three part inquiry determines if jurisdiction exists: (1) have the allegations made by the plaintiff been publicly disclosed; (2) if so, is the disclosed information the basis of the plaintiff's suit; (3) if yes, is the plaintiff an "original source" of that information. *Cooper*, 19 F.3d at 565, n. 4.

A. Public Disclosure

The first inquiry in determining whether the jurisdictional bar of the FCA applies is whether the allegations were publicly disclosed before the initiation of the qui tam action, because if not, there is no jurisdictional bar. *Cooper*, 19 F.3d at 565, n. 4;

*United States ex rel. Fine v. Advanced Sciences, Inc.*, 99 F.3d 1000, 1004 (10th Cir.1996); *Springfield Terminal*, 14 F.3d at 651. The Tenth Circuit has called this the "quick trigger" test. See, e.g., *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 552 (10th Cir.1992) (dismissing qui tam action based partly upon allegations or transactions previously disclosed in civil litigation, Senate hearings and numerous news releases), cert. denied, 507 U.S. 951, 113 S.Ct. 1364, 122 L.Ed.2d 742 (1993). Although the FCA was designed to encourage corporate whistleblowers, a "relator must be a true whistleblower." *United States ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032, 1035 (6th Cir.1994). The original source inquiry is irrelevant unless there has been a public disclosure. See *Wang v. FMC Corp.*, 975 F.2d 1412, 1416 (9th Cir.1992); see also *United States ex rel. Stinson v. Blue Cross Blue Shield of Georgia*, 755 F.Supp. 1040, 1050 (S.D.Ga. 1990) [hereinafter "Stinson I"].

Under the rough language of the statute, a public disclosure can occur (1) in a criminal, civil or administrative hearing; (b) in a congressional, administrative or General Accounting Office report, hearing, audit, or investigation; or (c) from the news media. 31 U.S.C. Section 3730(e)(4)(A).

When ascertaining what constitutes a public disclosure, some courts have interpreted the terms "criminal, civil or administrative hearing" broadly to include criminal indictments, complaints, and discovery materials filed in civil actions. See, e.g., *Springfield Terminal Ry.*, 14 F.3d at 652; *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1350 (4th Cir. 1994), cert. denied, 513 U.S. 928, 115 S.Ct. 316, 130 L.Ed.2d 278 (1994). Defendants maintain preliminarily that a "civil hearing" includes "civil litigation" between private parties. Defendants argue that the allegations set forth in the Amended Complaint parallel those set forth in the first and fourth State Complaints, contending Plaintiff's allegations were therefore disclosed in a civil hearing. On its surface,

this argument of first impression to this Circuit has appeal.

In analyzing the FCA, the Eleventh Circuit has taken the approach based on the plain language of the statute:

As a preliminary matter, we find that the methods of "public disclosure" set forth in section 3730(e)(4)(A) are exclusive of the types of public disclosure that would defeat jurisdiction under that section. The list of methods of "public disclosure" is specific and is not qualified by words that would indicate that they are only examples of the types of "public disclosure" to which the jurisdictional bar would apply. Congress could easily have used "such as" or "for example" to indicate that its list was not exhaustive. Because it did not, however, we will not give the statute a broader effect than that which appears in its plain language.

*Williams*, 931 F.2d at 1499–1500.

The plain meaning of the statute supports this determination that the enumerated means are exclusive. Notably, the filing of a lawsuit, civil litigation, or discovery are not methods specifically enumerated in Section 3730(e)(4)(A). United States ex rel. *Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life & Acc. Ins. Co.*, 721 F.Supp. 1247, 1256 (1989). "Congress was very specific in choosing the appropriate wording of the statute." See id. at 1256–57; but see *United States ex rel. Mistick PBT v. Housing Authority of the City of Pittsburgh, L.D.*, 186 F.3d 376, 387–88 (1999) (stating Section 3730(e)(4)(A) does not reflect careful drafting or precise language due to awkward and faulty language). Additionally, in the preceding paragraph, section 3730(e)(3), Congress specifically limited the role of the qui tam plaintiff by including the words "civil suit" and "proceeding." *Stinson*, 721 F.Supp. at 1256 (doubting the FCA or the intent of Congress necessitated an expansive reading of the language beyond its plain meaning, but ultimately failing to reach the issue here since the plaintiff argued that the information fell under the original

source exception). By precluding suits based upon specific sources, Congress sought to ensure that no qui tam relator could profit from information already in the public domain.

As one commentator has noted, aside from being "exclusive," with the exception of the news media, all the means involve certain federal government proceedings whereby the Government is a participant. See Gary W. Thompson, *A Critical Analysis of Restrictive Interpretations Under the False Claims Act's Public Disclosure Bar: Reopening the Qui Tam Door*, 27 Pub.Cont.L.J. 669, 696 (1998).

In such cases, the Government knows of the information that is disclosed due to its involvement and participation in the disclosure. See id. The Government may never find out about a litigation involving private litigants. Since Congress intended to further the exposure and resolution of fraud, defining civil hearings to include private information passed between parties during a lawsuit flies in the face of encouraging qui tam actions.

Accordingly, courts have usually drawn a distinction when it comes to public disclosure that are actually filed with the court and those that are held in the hands of private parties. Courts normally agree that a disclosure under the term "civil hearing" occurs whenever information is contained in a document actually filed with a court since the information is available to the public, but the public private distinction has led to divergent results. *Springfield Terminal*, 14 F.3d at 652; but see *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149 (3d Cir.1991) [hereinafter "Stinson II"] (holding a "civil hearing" occurs merely when a document is exchanged from one party to another during the course of discovery).

In fact, this Circuit has construed narrowly the definition of "Congressional, administrative or General Accounting Office report, hearing, audit or investigation." See *Cooper*, 19 F.3d at 566 (holding that the existence of a GAO report discussing widespread fraud without making specific allegations was not a public disclosure); see also *Hughes Aircraft*, 63 F.3d at 1518.

Nonetheless, every appellate court that has considered the issue of whether discovery material which has been filed with a court has therefore been publicly disclosed has answered in the affirmative. See, e.g., *United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 330 (6th Cir.1998); *Federal Recovery Services v. United States and Crescent City E.M.S., Inc.*, 72 F.3d 447, 450 (5th Cir.1995); *Quinn*, 14 F.3d at 652; *Siller*, 21 F.3d at 1350; *Springfield Terminal*, 14 at 652; *United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148 (2d Cir.1993), cert. denied, 508 U.S. 973, 113 S.Ct. 2962, 125 L.Ed.2d 663 (1993). Other Circuits, having concluded that the list was exhaustive like this Circuit previously held in *Williams v. N.E.C. Corp.*, have gone on to hold that civil litigation is included under the ambit of "civil hearing." See *U.S. ex rel. Dunleavy v. County of Delaware*, 123 F.3d 734, 744–46 (3d Cir.1997) (stating Section 3720(e)(4)(A) "constitutes an exhaustive rendition of the possible sources" of public disclosure); *Mistick*, 186 F.3d at 387–88 (resolving the section surely means for "hearings" to include full-blown civil and criminal trials). "For purposes of 3730(e)(4)(A), 'hearing' is roughly synonymous with 'proceeding.'" *Quinn*, 14 F.3d at 652; accord *Kreindler*, 985 F.2d at 1158; *Stinson II*, 944 F.2d at 1155–1157; *Siller*, 21 F.3d at 1350–1351.

■ As to the disclosures to the media, Dr. Butler has again publicly disclosed the information upon which this suit is based. Dr. Butler himself was responsible for the media revelations and the alleged fraud reaching the public; therefore, this Court is without jurisdiction if the qui tam action is based on those disclosures and relator was not the original source of the allegations. 31 U.S.C. § 3730(e)(4)(A); *U.S. ex rel. Biddle v. Board of Trustees of Leland Stanford, Jr. University*, 161 F.3d 533 (9th Cir.1998), cert. denied, —— U.S. ——, 119

S.Ct. 1457, 143 L.Ed.2d 543 (1999). For example, this Circuit has held that the mention of health insurer in a House subcommittee hearing on industry-wide Medicare fraud constituted a "public disclosure" under § 3730(e)(4). *Cooper*, 19 F.3d 562. The newspaper report just loosely mentions "fraud"; yet, taken as a whole, Dr. Butler's underlying lawsuit asserts the same allegations that are reported in the media. Consequently, as to those defendants, the information has been publicly disclosed.

Dr. Butler initiated his state court action and media disclosures three years prior to submitting his qui tam complaint to the Government. Defendant argues this prior disclosure rendered the qui tam complaint superfluous and instead frustrated the Government's ability to investigate the allegations due to the Confidentiality Order in the state court action. Whether the issue of frustration is true is largely irrelevant. Nonetheless, the Court finds that Dr. Butler has placed the allegations in the public domain. The Court must therefore turn to the question of whether the allegations are based upon those disclosures. The Court concludes they were.

B. Based Upon

The jurisdictional bar applies only when a qui tam action is "based upon" a public disclosure of allegations or transactions. Plaintiff contends that his FCA complaint is not "based upon" a public disclosure; rather, the complaint is "based upon" his employment and personal knowledge acquired before his termination that forms the basis of his state court action as well as his qui tam action.

Once again, courts are not in agreement as to when a suit is "based upon" publicly disclosed information. Compare, e.g., *United States ex rel. Findley v. FPC–Boron Employees' Club*, 105 F.3d 675, 682–85 (D.C.Cir.1990) (holding that a qui tam suit is based upon a public disclosure if it relies on the same allegations or transactions as those in the disclosure), cert. denied, 522 U.S. 865, 118 S.Ct. 172, 139 L.Ed.2d 114 (1997), with *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1347–49 (4th Cir.1994) (holding that a qui tam action is based on public disclosures only if it "actually derived [the] allegations" from the public disclosures). As one court has recognized, there is no "mathematical formulae ... for quantum or centrality of nonpublic information that must be in the hands of the qui tam relator in order for suits to proceed." *Springfield Terminal*, 14 F.3d at 653. When Congress rectified the FCA in 1986, the jurisdictional bar was shifted from one precluding actions "based upon evidence or information in the possession of the United States" to one precluding actions "based upon the public disclosure of allegations or transactions." *Biddle*, 161 F.3d at 538.

Other courts have dealt with the term "based upon" in a variety of manners. The Fourth Circuit takes a wholly unique position, focusing on whether the relator actually derived knowledge from the public disclosure. See *United States ex rel. Siller*, 21 F.3d 1339 (4th Cir.), cert. denied, 513 U.S. 928, 115 S.Ct. 316, 130 L.E.2d 278 (1994). In *Siller*, the relator was an employee of the defendant's distributor. After the distributor had already filed suit, the relator filed arguing that the action was not based on the prior public disclosure because the complaint was gathered from personal experience rather than the disclosures. Id. at 1349. Using Webster's Dictionary, the *Siller* court found that the relator was not jurisdictionally barred even though many of the facts had been publicly disclosed during discovery and settlement of a related litigation. *Id.* The Fourth Circuit concluded that the definition of "based upon" is to "use as a basis for," synonymous with "derived from." See *Siller*, 813 F.Supp. at 410, rev'd, 21 F.3d 1339 (4th Cir.), cert. denied, 513 U.S. 928, 115 S.Ct. 316, 130 L.Ed.2d 278 (1994) (dismissing, on appeal, a qui tam suit where the allegations were "derived from" a previous civil suit). Under this interpretation, courts look to whether the relator actually derived the allegations from pub-

licly disclosed sources. Hence, it is irrelevant whether Dr. Butler states the same information as in the state suit under this construction, unless the information gleaned by Dr. Butler is based from the state claim. This interpretation has been criticized for various reasons. *Siller* renders the jurisdictional bar largely meaningless in two respects. First, in many cases it is difficult if not impossible for a relator to offer evidence showing how the relator came upon the information. Second, if a relator has actually derived his information from the public disclosure, he could not possibly show that his information was "direct and independent." Therefore, the "original source" provision would be superfluous under *Siller's* interpretation of "based upon."

In harmony with this Circuit, the Tenth Circuit specifically rejected *Siller's* "derived from" standard and ruled that "based upon" means "supported by." *United States ex. rel Fine v. MK–Ferguson Co.*, 99 F.3d 1538, 1546 (10th Cir.1996). Highlighting the difference between the mixed, divergent theories, the Tenth Circuit holds that the relator's suit is barred if it is "substantially identical" to the allegations, again regardless of where the relator actually obtained the information. *Fine*, 99 F.3d at 1546, citing *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 552 (10th Cir.1992) (citations omitted). Likewise, the Third Circuit necessitates only that qui tam suits will be barred if based on information that would have been available to individuals in the public had they looked for it. *Stinson II*, 944 F.2d at 1155–56. The Second Circuit, in *U.S. ex rel. Doe v. John Doe Corp.*, 960 F.2d 318, reasoned that a broader construction of based upon would result in an flourish of parasitic actions. Accordingly, the court reasoned that "based upon" means the "same as" or "supported by." Id. at 324.

Moreover, the District of Columbia and the First, Eighth and Eleventh Circuits are more favorable to the relator. For example, the District of Columbia Circuit strictly construes the language, whereby only if a qui tam suit is based upon publicly disclosed allegations or transactions, not just publicly disclosed information, will it fail to meet the jurisdictional bar. *Springfield Terminal*, 14 F.3d at 653. The First Circuit meanwhile looks to the underlying purpose of the FCA and the potential remedy to the public in construing the language. See *United States ex rel. S. Prawer & Co. v. Fleet Bank*, 24 F.3d 320, 329 (1st Cir.1994).

■ In *Cooper v. Blue Cross & Blue Shield of Florida*, this Circuit looked at whether the relator actually based his lawsuit on the public disclosure, but also analyzed the issue as whether the relator could qualify as an "original source" of the disclosed information. This Circuit held that "the general definition of 'based on' is 'supported by.'" *Cooper*, 19 F.3d at 567. Thus, the FCA precludes suits "based in any part on publicly disclosed information." Id. This definition furthers the policies underlying the FCA, namely alerting the government to fraud and to encourage insiders to come forth with information. Therefore, if at the time a relator files a qui tam complaint, the allegations or transactions have been publicly disclosed, then the allegations are "based upon" the publicly disclosed information, and the relator must therefore show he or she is an original source of the information in order to establish jurisdiction.

Obviously, the factual allegations in Plaintiff's state law action are similar to the allegations in the FCA complaint. The only substantial difference between the two is that the FCA complaint does not specifically allege the defendants were submitting false claims to the government and only mentions two of the defendants in this action. Since Plaintiff's state court lawsuit involves only two of the Defendants named in this lawsuit, there is no jurisdictional bar as to the unidentified Defendants. *Cooper*, 19 F.3d at 566. Similarly, the information disclosed by Plaintiff to the media after filing of the state court action involves one of the Defendants

in this qui tam action. Dr. Butler brought his qui tam suit after the allegations were publicly disclosed; therefore, the allegations are "based upon" the publicly disclosed information. Although the result may seem cruel, since Dr. Butler was responsible for the public disclosure in the first place, the failure to satisfy the "based upon" public disclosure prong is not the end of the inquiry. See *Biddle,* 161 F.3d at 540, n. 2.

### C.   Original Source

If the suit is based upon a "public disclosure," the Court has no jurisdiction to hear the claim unless Plaintiff shows that he is an "original source" of the information. 31 U.S.C. 3730(e)(4)(B). The original source requirement represents a compromise between advancing private qui tam suits and preventing opportunistic actions. "Original source" is defined as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." Id.

The standards for the original source inquiry were articulated in *Cooper,* 19 F.3d at 567–68. The Court in *Cooper* specifically held that "it is not necessary for relator to have all relevant information to qualify as 'independent'." *Cooper,* 19 F.3d at 568, citing *Prudential,* 944 F.2d at 1160. The Court further held that information from others is "direct and independent" as long as the information is obtained through the relator's own efforts. Dr. Butler had independent knowledge of Charter's allegedly fraudulent conduct, obtaining information and making first-hand observations during the course of his employment at Charter. See *Wang v. FMC Corp.,* 975 F.2d 1412, 1417 (9th Cir.1992) (fact of subsequent public disclosure "does not rob [plaintiff] of what he saw with his own eyes"). Dr. Butler is exactly the type of plaintiff envisioned by the qui tam provisions of the False Claims Act.

As to disclosure, other circuits have held that the relator "must have directly or indirectly been a source to the entity that publicly disclosed the allegations on which a suit is based." *United States ex rel. Dick v. Long Island Lighting Co.,* 912 F.2d 13, 16 (2d Cir.1990). In *Dick,* the public disclosure was a prior lawsuit, consisting primarily of the same allegations. The court concluded that since the relators were not the source of the allegations in the first lawsuit, they were not original sources. The Ninth Circuit has reached a similar conclusion in *Wang v. FMC Corp.,* 975 F.2d 1412, 1418 (9th Cir.1992).

Citing the Sixth Circuit's opinion in *Jones* and the D.C. Circuit's opinion in *Findley,* Defendants maintain that in addition to establishing direct and independent knowledge and disclosure to the government prior to the filing of this qui tam action, the "relator also must provide the government with the information upon which the allegations are based prior to any public disclosure." *Jones,* 160 F.3d 326; *Findley,* 105 F.3d 675; see also *McKenzie,* 123 F.3d at 943.

However, this Circuit has held that in addition to having direct and independent knowledge, the relator need only provide his information to the government before instituting the qui tam action. *Cooper,* 19 F.3d at 567. In line with the Third, Fourth and Tenth Circuits, this Circuit holds that the imposition of an additional burden requiring an individual to disclose information to the government prior to making a public disclosure is contrary to the plain language of the statute. See, e.g., *United States ex rel. Fine v. Advanced Sciences, Inc.,* 99 F.3d 1000, 1006–1007 (10th Cir.1996); *Siller,* 21 F.3d at 1355; *Stinson II,* 944 F.2d at 1160. The requirement of disclosure to the government prior to public disclosure "does not appear in the plain language of the statute, and we find no support for it in the legislative history." *Cooper,* 19 F.3d at 568 n. 13. The Court in *Cooper* noted Senator Grassley's statement that "a party with knowledge of fraud against the government should be able to maintain a qui tam action

as long as he had some of the information in advance of the public disclosure." Id. The Court also observed that "[r]elators under the FCA are required to bring their allegations to the government's attention before filing suit." *Cooper,* 19 F.3d at 568 n. 13. Notably, the statute does not say "before the public disclosure."

■ As such, Dr. Butler qualifies as an original source. The state court complaint as well as the information to the media was disclosed by his own prerogative. As required, Dr. Butler provided the information to the government before filing this qui tam action. The information obtained by Dr. Butler was obtained "directly and independently," allegedly through his own eyes. Defendants argue that Dr. Butler did not provide the information prior to making the allegations known to the public. However, in accord with this Circuit's focus on the plain language of the statute and prior case history, the Court holds that such a requirement imposes reading of the word disclosure which is not present in the statutory language.

## III. CONSTITUTIONALITY

A standard defense is an attack on the constitutionality of the FCA. Defendant argues that the qui tam provisions of the FCA violate the (1) separation of powers clause of the Constitution, (2) the appointments clause, and (3) Article III standing. Each of these arguments has been brought repeatedly by defendants in qui tam cases, and each has been rejected resoundingly by the District and Circuit courts, but for different reasons.

As to the separation of powers argument, the Justice Department has discretion to intervene and take control of any qui tam case. *Truong,* 728 F.Supp. at 619 (citing *Morrison v. Olson,* 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988)). Even where the Government chooses not to intervene, and allows the qui tam relator to pursue the action individually, the case may not be settled or voluntarily dismissed without the Government's consent. See id.; see also *United States ex rel.*

*Milam v. University of Texas M.D. Anderson Cancer Center,* 961 F.2d 46, 49 (1992). The Government may, at its discretion, intervene at any time during the litigation "upon a showing of good cause." See id. (quoting 31 U.S.C. 3730(c)(3)).

With respect to the argument that the qui tam provisions violate the appointments clause, the *Truong* court held that relators "enjoy limited powers, have no formal duties, hold no established office, have no prescribed tenure, and receive no federal emoluments. As such, they are more appropriately classified as 'agents' for Appointments Clause purposes." *Truong,* 728 F.Supp. at 620. A relator is not attached to Congress or the judiciary as to make the executive branch's "responsibility to execute the laws faithfully is not threatened." See id. Other courts have agreed that the argument is not viable. See *Kelly,* 9 F.3d at 749–57; *Taxpayers Against Fraud,* 41 F.3d at 1041; *Amin,* 26 F.Supp.2d at 168–69.

■ A qui tam plaintiff must satisfy Article III's standing requirement in order to bring a suit in federal court. "The jurisdiction of the federal court is defined and limited by Article III of the Constitution" and is limited to "cases" and "controversies." *Flast v. Cohen,* 392 U.S. 83, 94, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1968). The law of Article III standing is built upon the principle of separation of powers. *Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984). The standing requirement avoids "convert[ing] the judicial process into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 473, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982) (quoting *United States v. SCRAP,* 412 U.S. 669, 687, 93 S.Ct. 2405, 2415–16, 37 L.Ed.2d 254 (1973)). The "injury-in-fact" test requires more than simply an injury to a cognizable interest. "It requires that the party seeking review be himself among the injured."

*Sierra Club v. Morton,* 405 U.S. 727, 734–35, 92 S.Ct. 1361, 1365–66, 31 L.Ed.2d 636 (1972). That injury must be concrete. *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 209, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). In addition, a court must look to the substantive issues of the case "to determine whether there is a logical nexus between the status asserted and the claim sought to be adjudicated." *Flast v. Cohen,* 392 U.S. 83, 102, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968).

The standing argument asserts that in a claim filed under 21 U.S.C. § 3729, the government suffers the injury, not the relator. As such, Dr. Butler would not have suffered the injury; rather, the injury would be to the public fisc. However, this argument has overwhelmingly failed. See, e.g., *U.S. ex rel. Hall v. Tribal Dev. Corp.,* 49 F.3d 1208, 1212–14 (7th Cir.1995); *U.S. ex rel. Taxpayers Against Fraud v. General Electric Co.,* 41 F.3d 1032, 1040–42 (6th Cir.1994); *U.S. ex rel. Kelly v. Boeing Co.,* 9 F.3d 743, 747–759 (9th Cir.1993), cert. denied, 510 U.S. 1140, 114 S.Ct. 1125, 127 L.Ed.2d 433 (1994); *Kreindler,* 985 F.2d at 1153–1155; *U.S. ex rel. Amin v. George Washington University,* 26 F.Supp.2d 162 (D.D.C.1998); *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 20 F.Supp.2d 1017, 1043–45 (S.D.Tex.1998); *Hopkins v. Actions, Inc. of Brazoria County,* 985 F.Supp. 706, 710 (S.D.Tex. 1997); *U.S. ex rel. Robinson v. Northrop Corp.,* 824 F.Supp. 830 (N.D.Ill.1993); *U.S. ex rel. Burch v. Piqua Engineering, Inc.,* 803 F.Supp. 115 (S.D.Ohio 1992); *U.S. Dept. of Housing and Urban Development ex rel. Givler v. Smith,* 775 F.Supp. 172 (E.D.Pa.1991); *Truong,* 728 F.Supp. 615; *U.S. ex rel. Newsham v. Lockheed Missiles and Space Co., Inc.,* 722 F.Supp. 607 (N.D.Cal.1989).

Four justifications have been given as to why a qui tam plaintiff meets Article III standing with regard to injury. First, courts have found that the real plaintiff in a qui tam suit is the government and that the government's injury satisfies the injury-in-fact required for Article III standing. Second, courts have concluded that the FCA effectively assigns the government's claims to qui tam plaintiffs, who then may sue based upon an injury to the federal treasury. See, e.g., *Kreindler,* 985 F.2d at 1154. Third, courts have found support for Article III standing from the personal stake that a relator has in the outcome of a case. *Truong,* 728 F.Supp. at 618–19; *Kelly,* 9 F.3d at 748. The relator's personal stake derives from three factors: (1) the qui tam plaintiffs must fund the prosecution of the FCA suit; (2) the qui tam plaintiff receives a sizable bounty if he prevails in the action; and (3) the qui tam plaintiff may be liable for costs if the suit is frivolous. Courts have viewed this personal stake as ensuring that cases have concrete factual disputes. Fourth, many courts have relied upon the lengthy history of the FCA and dicta in several Supreme Court cases as supporting the validity of the qui tam provisions of the FCA.

For example, in *United States ex rel. Stillwell v. Hughes Helicopters, Inc.,* the court looked to case history, but also found that the statutory bounty gave the relator a personal stake and thereby created injury in fact. *United States ex rel. Stillwell v. Hughes Helicopters, Inc.,* 714 F.Supp. 1084, 1096 (C.D.Cal.1989). The court also recognized that the relator, normally an employee who may suffer possible termination or job harassment due to the suit, creates injury in fact. *Id.* At 1099. In *United States ex rel. Truong. v. Northrop Corp.,* stating that historical bases was not viable under the modern theory of standing, the court found the basis for standing lies in the injury to the United States government, in whose name the suit had been brought. *Truong,* 728 F.Supp. at 618. This Circuit has held:

> The recovery of a qui tam relator is intended to remedy the harm he suffered in several ways: by distancing the relator from the fraud and rewarding him for his involvement in the government's fight against unlawful activity; by compensating the relator for any harm he suffered with respect to his

employment; and by compensating the relator for substantial time and expense involved in bringing a qui tam action. *Neher*, 11 F.3d at 138. The court went on to state:

> [A] qui tam relator suffers substantial harm and the qui tam provisions of the FCA are intended to remedy that harm. First, a qui tam relator can suffer severe emotional strain due to the discovery of his unwilling involvement . . . the actual or potential ramifications on the relator's employment can be substantial . . . Finally, the relator can suffer substantial financial burdens as a result of the time expense involved in bringing a qui tam action. We thus believe that the FCA's qui tam provisions are intended to redress wrongs suffered by individual relators . . . rather than the general public.

See *id.* (citations omitted). Other circuits have agreed that a qui tam plaintiff has standing to maintain a qui tam action despite the Government's election not to join in the suit. See, *e.g.*, *United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456, 460 (5th Cir.1977), cert. denied, 434 U.S. 1035, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978).

■ Defendant relies on a recent decision, appeal pending, in *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 982 F.Supp. 1261 (S.D.Tex.1997), where the court stated qui tam provisions "raise serious constitutional concerns as to whether Congress may delegate the executive powers of law enforcement to private parties who have not been appointed pursuant to the Appointments Clause . . ." and as to the "separation of powers principles as well." *Riley*, 982 F.Supp. at 1269, n. 5. In dismissing the qui tam suit, the court found that the qui tam plaintiff had suffered no injury-in-fact and that Congress cannot statutorily assign future interests to theoretical plaintiffs. *Riley*, 982 F.Supp. at 1265 (holding that Congress cannot, consistent with the constitutional principles of the separation of powers, confer standing on a qui tam plaintiff who has suffered no cognizable injury to allow that

plaintiff to prosecute an FCA action on the government's behalf). This Court cannot find any decisions reaching the same conclusion. In fact, *Riley* has been rejected recently by two courts in its very same federal district, the Southern District of Texas. *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 20 F.Supp.2d 1017, 1023–25 (S.D.Tex. Aug 18, 1998); *Hopkins*, 985 F.Supp. at 710. Given this Circuit's previous decisions regarding qui tam suits and the logic previously stated, this Court flatly rejects the decision in *Riley* and holds that Dr. Butler has standing under Article III.

## IV. Particularity

### A. Local Rule 3.01

Initially, Plaintiff notes that Defendants' Alternative Motion to Dismiss violates Local Rule 3.01, which precludes a party from filing supplemental memoranda without leave of court. The Local Rules do not permit the filing of unlimited motions dismiss without leave of the Court. See *Morroni v. Gunderson*, 169 F.R.D. 168 (M.D.Fla.1996); *Gambino v. Village of Oakbrook*, 164 F.R.D. 271 (M.D.Fla.1995). Defendants do not move to strike, but claim that the Alternative Motion should not be considered on its merits, or in the alternative, Defendants should be required to move for leave of court to file supplemental motions and to exceed the established twenty page limit.

This Court has expressed, with regard to untimeliness under the Local Rules, that the Eleventh Circuit has a vigorous policy of resolving issues on the merits and not on procedural technicalities. *Morroni*, 169 F.R.D. at 170. As such, the Court has discretion to overlook Defendant's failure to move for leave of court in order to file its supplemental motions which exceed the twenty page limit. In the interest of resolving issues expediently, the Court will consider Defendant's Alternative Motion to Dismiss Amended Complaint. However, this decision to overlook Defendant's failure to strictly comply with the Local Rules

is not meant to encourage noncompliance with the Rules.

## B. Failure to Plead with Particularity

Fed.R.Civ.P. 9(b) states that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). A mere conclusory allegation which asserts fraud without a description of the fraudulent conduct will not fulfill Rule 9(b). *Lincoln Nat'l Bank v. Lampe,* 414 F.Supp. 1270, 1278–79 (N.D.Ill.1976).

Pleading fraud with particularity is necessary in order to: (1) provide the defendants with sufficient notice of the acts of which the plaintiff complains to enable them to frame a response, (2) prevent fishing expeditions to uncover moral wrongs, and (3) protect defendants from unfounded accusations of immoral and otherwise wrongful conduct. *NCR Credit Corp. v. Reptron Electronics, Inc.,* 155 F.R.D. 690, 692 (M.D.Fla.1994); see also *Stinson I,* 755 F.Supp. at 1056–57.

The "clear intent of Rule 9(b) is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed." *Stinson I,* 755 F.Supp. at 1052. This provision applies to pleadings in False Claim Act actions. *Cooper,* 19 F.3d at 566–67; *U.S. v. Napco Intern., Inc.,* 835 F.Supp. 493, 495 (D.Minn.1993).

However, Rule 9(b) must be read in conjunction with Rule 8, Fed.R.Civ.P., regarding "short and plain" notice pleading, to effectuate the purpose of the FCA. See, e.g., *Durham v. Business Management Associates,* 847 F.2d 1505, 1511 (11th Cir. 1988); *Friedlander v. Nims,* 755 F.2d 810, 813 n. 3 (11th Cir.1985). The application of Rule 9(b) should not abrogate the concept of notice pleading. See id.; see also *Metrahealth Insurance Co. v. Anclote Psychiatric Hospital, Ltd.,* 1997 WL 728084 (M.D.Fla.). When pleading fraud, the plaintiff generally must allege the time, place, speaker and sometimes the content

of the alleged misrepresentations. *Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir.1990); *Anthony Distributors, Inc. v. Miller Brewing Co.,* 904 F.Supp. 1363, 1365 (M.D.Fla.1995).

The Eleventh Circuit has held that: "Allegations of date, time or place satisfy the Rule 9(b) requirement that the circumstances of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule." *Durham v. Business Management Associates,* 847 F.2d 1505, 1512 (11th Cir. 1988). Aside from additional means, courts recognize that if the alleged fraud occurred over an extended period of time and consisted of numerous acts, the specificity requirements are applied less stringently. *Miller,* 904 F.Supp. at 1365. Additionally, allegations of widespread fraud are insufficient to trigger the jurisdictional bar when such allegations do not specifically identify that defendant. *Cooper,* 19 F.3d at 566.

Then again, even in these cases the complaint must still " 'adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard' ". *Stinson I,* 755 F.Supp. at 1052. It must also " 'allege that the necessary information lies within the defendant's control, and then allegations must be accompanied by a statement of facts upon which allegations are based.' " *Stinson I,* 755 F.Supp. at 1052, citing *In re Craftmatic Securities Litigation,* 890 F.2d 628, 645 (3d Cir.1989).

The relaxed requirement is applied where "strict application of Rule 9(b) could result in substantial unfairness to private litigants who could not possibly have detailed knowledge of all circumstances surrounding the alleged fraud." *NCR Credit,* 155 F.R.D. at 692. A strict enforcement of Rule 9 would frustrate the purpose of the FCA, so courts allow an exception whereby a plaintiff can plead information that may be available only through discovery. *Leisure Founders,*

*Inc. v. CUC International, Inc.,* 833 F.Supp. 1562, 1574 (S.D.Fla.1993), quoting *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972); *U.S. ex rel. LaValley v. First Nat. Bank of Boston,* 707 F.Supp. 1351, 1355 (D.Mass.1988). Conversely, the relaxed standard does not remove the plaintiff's duty to adequately plead the content of the alleged fraudulent representations and the places where the activity was to have occurred. *Anthony Distributors,* 904 F.Supp. at 1366.

■ As a whole, the Complaint does provide extensive detail with regard to the process allegedly undertaken by the hospital staff. This, Plaintiff argues, is sufficient to satisfy the relaxed particularity requirements of 9(b). The Court disagrees. The shortcoming of Dr. Butler's Amended Complaint is that it does not "adduce specific facts supporting a strong inference of fraud." See *Stinson I,* 755 F.Supp. 1040 (S.D.Ga.1990). Specifically, although Dr. Butler alleged with some particularity the mechanism of the claimed fraud, he did not allege facts sufficient to satisfy Rule 9. Here, Dr. Butler has conducted extensive and wide-ranging discovery in the related state case, amounting to over 100,000 pages of discovery. Both actions arose out of alleged events that transpired during Dr. Butler's tenure at Charter. Despite a substantial period of discovery, none of Dr. Butler's operative False Claims Act averments are made on direct knowledge. Plaintiff's reliance on this Court's ruling in *Metrahealth Ins. Co. v. Anclote Psychiatric Hosp., Ltd.* is misplaced. While the complaints in that case was similar in that it identified the defendants generally by position and gave dates ranging over a period of years, the plaintiffs in *Metrahealth* provided specific instances illustrative of alleged widespread fraud. In the instant case, Dr. Butler has provided no illustrative instances of fraud, or has Plaintiff provided any supplementary affidavits.

Markedly, the complaint fails to refer to specific employees who may have been involved in submitting false claims. In *United States ex rel. Robinson v. Northrop,* 149 F.R.D. 142, 145 (N.D.Ill.1993), the complaint alleged that the defendant, Northrop once again, made fraudulent statements to the government through certain employees identified variously as "a Northrop engineer," "Northrop employees," or "supervisors." Id. at 145. The Court found these identifications to be insufficient under Rule 9(b), stating that it was "not enough for plaintiffs to allege that 'a Northrop engineer' or 'Northrop employees' or 'supervisors' committed fraudulent acts," and that "the identity and/or role of the individual employee involved in the alleged fraud must be specified in the complaint." Id. at 145. Here, the complaint refers only to "staff" generally, without identifying any actor, individual or claim involved in the alleged fraud to any extent. On the temporal factor, Plaintiff merely states that the fraud took place "beginning on an unknown date prior to 1989, and continuing until the date of this Complaint," but does not point to any specific point in time. Plaintiff's Memorandum of Law in Opposition to Defendants' Alternative Motion to Dismiss Amended Complaint stresses that "because so many hospital administrators and administrative staff members were involved in the fraud, it would be virtually impossible to identify, at this juncture, each person who participated and the specific activities of each person." See Plaintiff's Memorandum of Law in Opposition to Defendants' Alternative Motion to Dismiss Amended Complaint at 5. Yet, the state court complaint identifies specific defendants, and supposedly this information is within the Plaintiff's personal knowledge. Plaintiff's Amended Complaint in fact does not mention but one specific person, time, or incident.

None of allegations set forth in the amended complaint satisfy Rule 9(b), under the strict or relaxed application. Plaintiff does not provide any specific names of staff involved in the fraud. Moreover, besides naming a hospital Administrator only by title, Plaintiff merely

states "administrative staff," patients and Charter hospital in the most general of terms. Likewise, the complaint lists the dates as "an unknown date prior to 1989, and continuing until the date of this complaint."

This Circuit has held that a plaintiff has the right to amend a complaint at least once to eliminate any deficiencies found by the court. *Cooper*, 19 F.3d at 568. The Federal Rules of Civil Procedure provide that leave to amend the complaint shall be freely given as justice so requires. Fed. R.Civ.P. 15(a). As such, and even though this is an amended complaint, Dr. Butler is granted leave to amend his complaint and bring it into compliance with the rule with this Court's permission. *Cooper*, 19 F.3d at 568–69.

## CONCLUSION

For the reasons stated above, the Court concludes that it does have subject matter jurisdiction over this action. Plaintiff, however, has not pleaded its allegations with particularity as required by Rule 9(b). Before the Court will dismiss an action on that ground, it will give the Plaintiff an opportunity to address, the inadequacy. Therefore, the Court **denies** Defendant's Motion to Dismiss (Dkt.48) to the extent that it is based on lack of subject matter jurisdiction and constitutionality. The Court **grants** Defendant's Alternative Motion to Dismiss (Dkt.50) amended complaint, but allows Plaintiff fifteen calendar days in which to address the deficiencies in the Amended Complaint. The Motion for Leave to File Reply is **denied** (Dkt.62).